MACON, DUBLIN & SAVANNAH RAILROAD CO. *v.* PORTER.

No. 14366. November 17, 1942.

*Nelson & Nelson, William Brunson, Jones, Jones & Sparks,* and *Charles M. Cork,* for plaintiff in error. *Miller & Lowrey,* contra.

HEWLETT, Justice. The question for decision is, where a child having a living father but no mother has been adopted by an aunt, has the relation between father and child been severed so completely as to prevent the child from recovering for the homicide?

While statutes providing that a widow or child may recover for the homicide of the husband or parent are strictly construed, because in derogation of common law, the same is true of adoption statutes taking away rights and privileges of minors. In 2 C. J. S. 374, § 6, it is said: "As the main purpose of adoption statutes is the promotion of the welfare of children, bereft of the benefits of the home and care of their real parents, wherever possible without doing violence to the terms of the statute, such a construction should be given adoption laws as will sustain, rather than defeat, this purpose." Also p. 454, § 63(c): "In view of the tendency of the courts to construe adoption statutes so as to benefit the child, . . and also in view of the fact that a statute severing the relation between parent and child is in derogation of common law and should for that reason be strictly construed, it has been held that an adoption statute providing that the natural parents shall be divested of all legal rights and obligations with respect to such child should not be construed so as to deprive the child of its right

to inherit from or through its natural parents." Also (§ 57(c)): "Where only the husband has adopted the child, the surviving widow can not claim custody of the child by virtue of the adoption proceedings." In 1 Am. Jur. 651, § 51, it is said: "A statute providing that recovery for death of a child shall go to the mother and father, if both are living, and, if the mother be dead, the whole to the father, applies in favor of the natural, and not the adoptive, father and mother, and is not repealed by another statute providing that upon the death of an adopted child, any property owned by it at the time of its death shall pass in the same manner as if it was the natural child of the adoptive parents." See In re Knott, 138 Tenn. 349 (197 S. W. 1097); James v. Williams, 169 Tenn. 41 (82 S. W. 2d, 541); Magevney v. Karsch, 167 Tenn. 32 (65 S. W. 2d, 562, 92 A. L. R. 343); Jackson v. Alexiou, 223 Ky. 95 (3 S. W. 2d, 177, 56 A. L. R. 1345).

In the work from which we have just quoted we find also the following statement: "Adoption statutes, as well as matters of procedure leading up to adoption, should be liberally construed to carry out the beneficent purposes of the adoption institution and to protect the adopted child in the rights and privileges coming to it as a result of the adoption. But it does not follow that an adoption statute should be liberally construed to divert from its natural course the descent of property left by those who are not parties to the adoption proceedings. Consanguinity is so fundamental in statutes of descents and distributions that it may only be ignored by construction when courts are forced so to do either by the terms of express statute or by inexorable implication. To prescribe a course of descent which will take property of deceased persons out of the current of their blood, the legislature must use explicit and unmistakable language." 1 Am. Jur. 664, § 64.

While the foregoing statements would not be applicable in this State as applied to inheritance and other matters that are dealt with in our statutes relating to adoption of children, for in all such instances the statutes themselves would control, yet the statements above quoted would clearly illustrate that statutes relating to adoption should on general principles be construed liberally in favor of the child, and should not be so construed and applied as to deprive the child of any right that it may have under other laws, in the absence of express declaration or necessary implication to

that effect. The statute that gives to a child a right of action for the negligent homicide of its father certainly would include a natural father, where it is considered separately and apart from the adoption statutes. While the latter statutes must be considered in answering the question propounded, they can not, under the proper rules of construction, be taken as so modifying the other statute as to exclude the child's right to sue for the homicide of its natural parent. See *Travelers Insurance Co.* v. *Williamson, 35 Ga. App.* 214 (132 S. E. 265). Nor is the right of action in such case conditioned upon any compensatory consideration resulting from dependency, as was true before the amendment of 1924 adding the words "minor or sui juris." *Peeler* v. *Central of Georgia Railway Co.,* 163 *Ga.* 784 (2) (137 S. E. 24).

Construing the adoption statute, in so far as it takes away rights and benefits from children, with the same degree of strictness that statutes giving a cause of action are construed, where a minor child born in lawful wedlock and having a living father, but no mother, was legally adopted by his aunt on July 21, 1925, when the above cited section of Park's Code was in force, and where the minor continued to live with his aunt as her adopted child, and where while so living his natural father was killed by the running of a railroad-train in 1941, the minor, at the time of the death of his natural father, was the "child" of the decedent within the meaning of the Code, § 105-1302. A different answer is not required on account of the ruling in *Alexander* v. *Lamar,* 190 *Ga.* 656 (10 S. E. 2d, 42), s. c. 188 *Ga.* 273 (3 S. E. 2d, 656, 123 A. L. R. 1032), where it was held in effect that a natural mother could not recover property her child had inherited from the adoptive parents, and where no question as to the welfare of the child was involved.

The adoption statutes and decisions construing them in reference to inheritance are not controlling. This action was brought under the statute which confers upon a "child" the right to sue for the tortious homicide of its father. The recovery, if any, would in no sense constitute a part of the estate of the deceased father; and the claimed right of recovery is a matter which is in no wise dealt with in the adoption statutes.

*Answer in affirmative. All the Justices concur.*

REID, Chief Justice, and JENKINS, Justice, concurring specially. If upon the adoption of the child by a foster mother, with the con-

sent of the father, the relationship of father and child becomes thereby ipso facto utterly extinguished, then and in such event, there being no legal status of father and child subsisting, but that status having been totally destroyed, the suit in behalf of the child for the death of the natural father could not be maintained. Certainly it could not be unless squarely upon the construction of the homicide statute given by the majority. If, however, it be true that the natural status of a child is to have both a father and a mother, and if it be true that the relationships of father and child and of mother and child are not antagonistic, but normal, and if upon the death of the mother the consent by the father to the adoption of the child, not by a foster father and mother, but by a foster mother only, the relationship of father and child by the natural father and his offspring is not disturbed, then and in such event the rights of the child to maintain the action for the death of his father have not been taken from him. This latter theory is, we believe, the correct one. If this were not true, when the mother of a child dies and the father remarries, and the stepmother legally adopts the child, as is often done, such action by the stepmother, with the consent of the father, would result in the relinquishment by the real father to the stepmother of all his parental rights, duties, and control.

As to rights of inheritance and other "legal rights and liabilities," as held in *Alexander* v. *Lamar,* 188 *Ga.* 273 (supra), in case of adoption there is an "absolute substitution" of *parent or parents.* In the present case, if the aunt's husband had joined in the adoption, the substitution would have been complete and operative as to both parents. It is complete as to the adopting mother. Admittedly the case is not without difficulty; and to have the child legally acquire a new mother and by his consent taken from the home of the father may be said to present an abnormal or awkward situation, but it is one which the law seems to permit, and is no more awkward than the case where, upon the separation or divorce of the natural parents, the custody of the child should be awarded exclusively to the mother. In such a case the father is deprived of the normal ties and relationship that would otherwise obtain, but as between him and the child the rights of inheritance remain undisturbed. Also in such a case, if the mother should die while the child is still a minor, custody would revert to the father. *Girt-*

*man* v. *Girtman,* 191 *Ga.* 173 (5) (11 S. E. 2d, 782); *Chapin* v. *Cummings,* 191 *Ga.* 408, 412 (12 S. E. 2d, 312).

For these reasons the question should be answered in the affirmative; and we concur in the judgment, irrespective of whether, as held by the majority, the homicide statute itself must be considered as conferring the right to sue on the natural "child," without regard to adoption.