## A95A1609. EDMONSON v. THE STATE.
(464 SE2d 839)

Pope, Presiding Judge.

Billy Wayne Edmonson was convicted of rape, statutory rape, incest, aggravated child molestation, sodomy, and cruelty to children.[1] The evidence at trial showed that Edmonson repeatedly sexually assaulted and sodomized the victim, his thirteen-year-old adopted daughter, over a nine-month period. Edmonson enumerates five errors.

1. Relying in part on *McCranie v. State,* 157 Ga. App. 110, 111 (276 SE2d 263) (1981), Edmonson argues that the judgment was void because all counts should be merged into the single count of cruelty to children.

We look to the actual evidence introduced at trial to determine " 'whether a crime is established by proof of the same or less than all the facts required to establish the commission of another crime within the meaning of OCGA § 16-1-6.' " *Dawson v. State,* 203 Ga. App. 146, 147 (2) (416 SE2d 125) (1992). " 'If the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under OCGA § 16-1-6.' " Id. Here, the victim testified that Edmonson forced her to have intercourse or oral sex with him approximately ten or eleven times over a nine-month period. This evidence distinguishes *McCranie,* which held, solely on its facts, that because an incest count was based on the same act of sexual intercourse as a statutory rape count, the former was included in the latter. The evidence here did not require merger. *Kirby v. State,* 187 Ga. App. 88, 89 (369 SE2d 274) (1988). Because nothing in the indictment indicates that its counts arise from the same incident, we reject Edmonson's argument that the indictment was defective for failing to allege separate and

---

[1] At sentencing, the trial court merged a child molestation count with the statutory rape count.

distinct acts.

2. Edmonson challenges the sufficiency of the evidence on the rape count, arguing that the state failed to prove the element of force beyond a reasonable doubt.

The evidence is sufficient as a matter of law if, when viewed in the light most favorable to the state, a rational trier of fact could find all the essential elements of the crime. *Jackson v. Virginia*, 443 U. S. 307, 319-320 (99 SC 2781, 61 LE2d 560) (1979). On appeal, a criminal defendant no longer enjoys the presumption of innocence. *Pardo v. State*, 215 Ga. App. 317 (1) (450 SE2d 440) (1994).

Rape consists of three elements: (1) carnal knowledge of a female; (2) forcibly; and (3) against her will. OCGA § 16-6-1 (a). A female under 14 years old is legally incapable of consenting to sex. *Drake v. State*, 239 Ga. 232, 233 (1) (236 SE2d 748) (1977). Where this is the case, "the requirement of force is found in constructive force, that is, in the use of such force as is necessary to effect the penetration made by the defendant." Id. at 234-235. The victim's testimony that when she was 13, Edmonson forced his penis inside her vagina against her will is sufficient to support the conviction.

3. Edmonson argues that, because the state failed to prove the victim was related to him by blood or marriage or was his adoptive daughter, the evidence on incest was insufficient.

Although the state did not introduce documentary evidence of the adoption, the unrebutted testimony of the adoption by Edmonson, his wife, and the victim was sufficient to establish the relationship. *Johnson v. State*, 195 Ga. App. 385, 387 (4) (393 SE2d 712) (1990). The effect of this adoption was to create "the relationship of parent and child . . . as if the adopted individual were a child of biological issue. . . ." OCGA § 19-8-19 (a) (2). Because adopted individuals "enjoy every right and privilege of a biological child," they are statutorily protected from incest. Id.

4. Edmonson's fourth enumeration of error states that the evidence of aggravated child molestation was insufficient because the state failed to prove an intent to arouse his own sexual desires or those of the victim.

The requisite intent may be inferred from Edmonson's conduct. *Branam v. State*, 204 Ga. App. 205, 206 (1) (419 SE2d 86) (1992). Evidence of his participation in repeated sexual acts with the victim and his requirement that his sons enter the house only with his permission provides sufficient evidence of intent.

5. Edmonson argues that the verdict was against the clear weight of the evidence.

This court's review is limited to the sufficiency, not the weight, of the evidence. *Jenkins v. State*, 216 Ga. App. 433 (1) (454 SE2d 543) (1995). Having considered the evidence in the light most favorable to

the verdict, we find it sufficient to sustain the convictions within the meaning of *Jackson v. Virginia*, 443 U. S. at 319-320.

*Judgment affirmed. Beasley, C. J., and Ruffin, J., concur specially.*

RUFFIN, Judge, concurring specially.

I fully concur with the majority opinion. I write separately regarding Division 3 to address potential concerns relative to the distinction between an adopted daughter and a daughter related to her father by blood.

The majority cites language from our adoption statutes requiring that an adopted child be treated *"as if the adopted individual were a child of biological issue* of that petitioner." OCGA § 19-8-19 (a) (2). That statute further provides that "[t]he adopted individual *shall enjoy every right and privilege of a biological child* of that petitioner; [and] *shall be deemed a biological child of that petitioner. . . ."* (Emphasis supplied.) Id. OCGA § 16-6-22 (1) requires for the offense of incest that a father and daughter be related by "blood or by marriage. . . ." Appellant, Billy Wayne Edmonson, argues that because the incest statute requires a "blood" relationship, adopted children cannot be the victims of incest. In order to embrace this argument, one must distinguish between a biological relationship and a blood relationship. I do not believe such a distinction is possible, and even if it were, the circumstances of this case demand that the victim be treated as Edmonson's blood daughter under the adoption statute.

The first rule of statutory construction requires courts to "look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). Our Supreme Court has made it clear that insofar as the adoptive parent is concerned, the legislature's intent in promulgating OCGA § 19-8-19 (a) (2), was to place an adoptive parent on the same footing, and with the "same rights and obligations as a biological parent." *Ivey v. Ivey*, 264 Ga. 435, 436 (1) (445 SE2d 258) (1994). If, under the incest statute, a blood father is required to refrain from sexual intercourse with his daughter, then the same must be true of an adoptive father who stands on the same footing and with the same obligations to his daughter as the blood parent. An adoptive father cannot be permitted to enjoy the benefits of fatherhood, engage in sexual relations with his adoptive daughter, and then claim that he cannot be prosecuted for incest. To entertain such whim is to summon a specie of credulity that is beyond the province of humankind.

As for the adopted child, historically our adoption statutes have been construed so as to benefit the child. " 'As the main purpose of adoption statutes is the promotion of the welfare of children, . . . wherever possible without doing violence to the terms of the statute,

such a construction should be given adoption laws as will sustain, rather than defeat, this purpose.' [Cit.]" *Macon, Dublin &c. v. Porter*, 195 Ga. 40, 41 (22 SE2d 818) (1942). The vicissitudes of life produce many aberrations, and incest is among the most abhorrent. Certainly a construction of the adoption statute that prohibits an adoptive father from having incestuous relations with his adopted daughter is more beneficial to the daughter's welfare than a construction that allows such loathsome and disgusting relations.

Moreover, we must be conscious of the "evil" the legislature sought to prevent in enacting the incest statute. In passing the incest statute, the legislature must have intended to do more than prohibit intercourse with a child, for this could have been easily accomplished within the confines of OCGA § 16-6-3, creating the offense of statutory rape. It is the violation of familial relationships and the trust and emotional attachments that stem from those relationships that are, in addition to sexual relations, proscribed by the incest statute. See generally, *Raiford v. State*, 68 Ga. 672 (2) (1882) (discussing the vulnerability of a child under such a relationship). I do not believe under any circumstances, that our General Assembly intended to exclude adopted children from such protection.

The second rule of statutory construction is to apply to all words their ordinary significance. OCGA § 1-3-1 (b). After much searching, I cannot comprehend a definitive distinction between "biological" relationships and "blood" relationships as those terms are used in the two statutes. Indeed, The American Heritage College Dictionary (3rd ed. 1993) defines "biological" as: "Related by blood: [e.g.,] his biological sister." I believe under the circumstances of this case, that upon giving the words "biological" and "blood" their ordinary significance, it is clear that the words are synonymous. Courts should not use the outrageous to decide the obvious.

I am authorized to state that Chief Judge Beasley joins in this special concurrence.

DECIDED NOVEMBER 17, 1995 —
RECONSIDERATION DENIED DECEMBER 5, 1995 —

*Virgil L. Brown & Associates, Bentley C. Adams III, Larkin M. Lee*, for appellant.

*Peter J. Skandalakis, District Attorney, Jeffery W. Hunt, Assistant District Attorney*, for appellee.