S08A1955. WILLIAMS v. THE STATE.

(672 SE2d 619)

SEARS, Chief Justice.

In 2006, Reginald Quentin Williams was convicted of malice murder and 43 related crimes as a result of his participation in a string of armed robberies of Atlanta-area stores specializing in the sale of erotica and materials used in the illicit drug trade. Williams appeals, arguing that the trial court erred in refusing to grant a mistrial after a State's witness referred to Williams's gun ownership and in denying his motion for new trial based on ineffective assistance of trial counsel. Finding no merit in these arguments, we affirm.[1]

1. Masked gunmen robbed three adult entertainment stores in the Atlanta area over a six-month period in 2003. The robberies followed a similar pattern: the assailants entered wearing masks and gloves, fired into the air, and stole cash and drug paraphernalia (digital scales and "cut," i.e., vitamins used to dilute illegal sub-

---

[1] Williams committed his crimes on April 29, May 4, and September 30, 2003. On September 17, 2004, a Fulton County grand jury indicted Williams on one count of malice murder for the shooting death of James Herrington and numerous counts of felony murder, armed robbery, kidnapping, aggravated assault, and illegal possession of a firearm. At the conclusion of a 12-day trial that took place January 9-26, 2006, the jury convicted Williams of all charges. The trial court sentenced Williams to life in prison plus over 100 years consecutive. Williams filed a timely motion for new trial on February 24, 2006, and the trial court entered an amended final judgment and sentence on March 9, 2006. Williams, represented by new counsel, filed an amended motion for new trial on March 13, 2008, which the trial court denied April 22, 2008, after an evidentiary hearing. Williams filed a timely notice of appeal to this Court on April 28, 2008, and we heard oral argument on November 17, 2008.

stances such as cocaine to increase profit margins in drug deals). In the third robbery, the assailants shot and killed a customer, James Herrington.

The police were unable to identify the assailants at first, even though a surveillance video from the third crime scene caught the getaway car for a split second. Then, on June 7, 2004, criminal informant Steve Lewis came forward and told the police that his neighbor, Williams, had bragged to him about committing the second robbery. Lewis correctly identified the manner in which the robbery was committed, the types of items stolen, and the make and model of the getaway car. According to Lewis, Williams also invited him to participate in the second robbery before it happened, but he declined. Lewis admitted that after seeing how much money Williams was making off the stolen goods — Williams was selling the digital scales for $350 apiece — he regretted his decision not to participate in the crimes.

As a result of Lewis's statement, the police went to Williams's apartment complex, where they found the getaway vehicle. After learning that the vehicle was registered to Martha Parks-Cole, Williams's mother, and that the license tag was originally issued to Williams, the police obtained a search warrant for Williams's apartment. There, they seized a sweatsuit with distinctive striping and stitching matching descriptions of clothing worn during the second robbery, an orange mesh bag like the one used in two of the three robberies, and numerous bottles of cut later identified as having been stolen during the robberies. The police arrested Williams and obtained a search warrant for a blood sample. Williams's DNA matched DNA found on broken glass at the third crime scene.

Although Williams does not specifically enumerate insufficiency of the evidence as error, we raise the issue on our own. Viewed in the light most favorable to the verdict, we have no difficulty concluding that the evidence presented was sufficient to authorize a rational trier of fact to find Williams guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Williams claims the trial court erred in denying a motion for mistrial after Lewis testified that Williams owned a gun. According to Williams, this testimony constituted impermissible bad character evidence. However, evidence of gun ownership does not, in and of itself, impute bad character to a defendant.[3] Accordingly, the trial court did not err in denying Williams's motion for a mistrial.

---

[2] *Jackson v. Virginia*, 443 U. S. 307, 309 (99 SC 2781, 61 LE2d 560) (1979); *In re Winship*, 397 U. S. 358, 361-364 (90 SC 1068, 25 LE2d 368) (1970).

[3] *Sweet v. State*, 278 Ga. 320, 325 (602 SE2d 603) (2004); *Davis v. State*, 272 Ga. 327, 329 (528 SE2d 800) (2000).

3. Williams contends the trial court erred in denying his new trial motion premised on ineffective assistance of trial counsel. To prevail on this claim, Williams was required to show that his attorneys' performance was professionally deficient, and that but for their errors, the outcome of the proceedings would have been different.[4]

Williams points to two instances of alleged substandard performance on the part of trial counsel. First, Williams claims trial counsel erred in failing to file a motion to suppress or motion in limine to exclude the evidence obtained from the search of his apartment. In order to establish deficient performance based on the failure to seek suppression of evidence, a defendant must show that he or she had a meritorious Fourth Amendment claim.[5] However, aside from his own conclusory deprecations of Lewis's credibility, Williams offered nothing at the hearing on the motion for new trial to support his allegation that the search warrant for his apartment was issued without probable cause. Williams's failure to demonstrate the existence of a meritorious Fourth Amendment argument doomed his claim of professionally deficient performance by trial counsel.

Williams's other charge of deficient performance relates to the State's DNA evidence. DNA testing matched blood taken from broken glass at the third crime scene to Williams. Williams contends that trial counsel performed unprofessionally in failing to investigate the shortcomings of DNA evidence generally and in not calling a DNA expert to testify for the defense at trial. Williams's complaints about the adequacy of counsel's pretrial research on the science of DNA testing are pure speculation given his failure to call trial counsel to testify at the hearing on the new trial motion. Williams's criticism of the decision not to call a DNA expert for the defense at trial is equally baseless, because he did not produce a DNA expert at the motion for new trial hearing who was willing to testify that the State's DNA evidence was defective. Instead, Williams provided the trial court with nothing more than an outline of the types of things a DNA expert would consider in evaluating the reliability and accuracy of DNA evidence in a particular case. Williams's unfounded speculation and generalized litigation guide do not add up to a showing of professionally deficient performance by trial counsel.

Williams seeks to brush aside his failure to produce a DNA expert at the motion for new trial hearing by pointing to the Court

---

[4] *Strickland v. Washington*, 466 U. S. 668, 687-696 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. State*, 284 Ga. 599, 601 (2) (669 SE2d 98) (2008).

[5] *Kimmelman v. Morrison*, 477 U. S. 365, 382 (106 SC 2574, 91 LE2d 305) (1986).

of Appeals' decision in *Dingler v. State*.[6] According to Williams, *Dingler* stands for the proposition that where scientific evidence that is subject to varying opinions is the sole link between a defendant and a crime, a trial court's failure to provide funds to hire a defense expert results in a trial that is fundamentally unfair. Williams reasons that if a trial court's failure to appoint an expert witness in a "sole link" case renders a trial fundamentally unfair, then surely a defense attorney's decision not to seek the input of a DNA expert in such a case constitutes professionally deficient performance.

Williams's argument is sound insofar as it goes.[7] The problem for Williams is that this case is not one where the scientific evidence is "critical in that it [i]s the sole link between the defendant and the crime at issue."[8] Lewis testified at trial that Williams invited him to participate in one of the robberies, bragged to him about it afterwards, and showed him the proceeds of the crime. Drug paraphernalia taken in the robberies was found in Williams's apartment along with a bag used by the robbers and the clothes one of the robbers wore. The State presented physical evidence unrelated to DNA and abundant witness testimony in this 12-day trial connecting Williams to each of the crimes for which he was convicted. Consequently, *Dingler* is inapposite, because the DNA evidence was far from the "sole link" between Williams and his crimes.

Having failed to prove deficient performance by trial counsel, Williams could not succeed on his ineffective assistance of counsel claim. The trial court was therefore correct to deny his motion for new trial.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 26, 2009.

*Little & Crumly, Samuel F. Little, Jr.,* for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Reggie A. Lampkin, Assistant Attorney General,* for appellee.

---

[6] *Dingler v. State*, 281 Ga. App. 721, 722 (637 SE2d 120) (2006).
[7] See *Thornton v. State*, 255 Ga. 434, 435 (339 SE2d 240) (1986).
[8] *Dingler*, supra, 281 Ga. App. at 722.