## A09A1486. PYBURN v. THE STATE.
(687 SE2d 909)

BERNES, Judge.

Thomas Larry Pyburn appeals his conviction for incest.[1] He claims that the evidence was insufficient to authorize his conviction and that he received ineffective assistance of trial counsel. We disagree and affirm.

"Following a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent." *Neugent v. State*, 294 Ga. App. 284, 285 (1) (668 SE2d 888) (2008). So viewed, the evidence showed that D. P. is the biological and adoptive daughter of Pyburn and Teresa Finley. In November 1973, Pyburn began a sexual relationship with Finley and shortly thereafter, Finley became pregnant with D. P. Finley testified at trial that at the time she became pregnant, she was not having sexual relations with any other person. According to the forensic biologist who testified at trial, DNA tests showed a 99.999 percent probability that Pyburn was D. P.'s father.

Finley called Pyburn some time in 1974 and told him she was pregnant with his child. Pyburn told her he was getting married and not to bother him anymore. Pyburn and Finley did not have any contact until about fourteen years later, when in November 1988, the two engaged in a telephone conversation. During the conversation, Finley told Pyburn that he had a beautiful 14-year-old daughter.

Pyburn and Finley subsequently resumed their relationship, moved to Florida, and married in June 1989. Shortly after they were married, Pyburn told Finley that he wanted D. P. "to have her daddy's last name" and subsequently adopted D. P. D. P. was "almost sixteen" when Pyburn adopted her. In May 1991, Finley left D. P. with Pyburn and later divorced Pyburn.

According to D. P., Pyburn began "messing" with her when she was 14 years old. They first had sexual intercourse when she was 16, "right after the adoption happened." They subsequently had five

---

[1] Pyburn was indicted for aggravated child molestation, two counts of cruelty to children in the first degree, obstruction of an officer, and incest. Following a trial, the jury found Pyburn not guilty of obstruction and guilty on the other charges. In its order on Pyburn's motion for new trial, the trial court vacated Pyburn's cruelty to children convictions due to insufficiency of the evidence and granted him a new trial on the charge of aggravated child molestation due to ineffective assistance of trial counsel. The trial court denied Pyburn's motion for a new trial on his incest conviction.

children together, the youngest of whom, their daughter K. P., was conceived in Glynn County. The forensic biologist testified at trial that DNA tests showed a 99.9989 percent probability that Pyburn was K. P.'s father. D. P. testified that Pyburn was not listed as the father on K. P.'s birth certificate because Pyburn "didn't want any suspicions raised about . . . us being father and daughter."

1. "A person commits the offense of incest when the person engages in sexual intercourse with a person to whom he or she knows he or she is related either by blood or by marriage as follows: . . . Father and daughter. . . ." OCGA § 16-6-22 (a). Pyburn argues that the state failed to prove that he knew D. P. was his *biological* daughter. We disagree inasmuch as the evidence shows that Finley informed him of this fact. Furthermore, as the jury was charged, adoptive children enjoy the rights and privileges of a biological child, including protection from incest. *Edmonson v. State*, 219 Ga. App. 323, 324 (3) (464 SE2d 839) (1995), overruled on other grounds, *Collins v. State*, 229 Ga. App. 658 (495 SE2d 59) (1997). Based on the evidence at trial, the jury was authorized to conclude that Pyburn took the necessary legal steps to adopt D. P. and that he therefore knew of the adoptive relationship.[2] The evidence was sufficient to enable any rational trier of fact to find Pyburn guilty beyond a reasonable doubt of the crime of incest. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Pyburn also contends that he received ineffective assistance of trial counsel. "In order to succeed on this claim, [Pyburn] must show that his counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there is a reasonable probability the outcome of the proceedings would have been different." *Varner v. State*, 285 Ga. 300, 301 (3) (676 SE2d 189) (2009). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Punctuation omitted.) *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009).

(a) Pyburn complains that his trial counsel's performance was deficient in light of statements trial counsel made to the jury during voir dire regarding the nature of the evidence, the burden of proof, and Pyburn's right not to testify. Specifically, Pyburn objects to the

---

[2] Pyburn contends that the state could only prove the adoption by a certified copy of the decree, but we found in *Edmonson* that unrebutted testimony of an adoption was sufficient for purposes of establishing the relationship in a prosecution for incest. See *Edmonson*, 219 Ga. App. at 324 (3). We decline Pyburn's invitation to find that *Edmonson* was wrongly decided on this issue. Furthermore, Pyburn did not object to the testimony that he had adopted D. P., and so any best evidence objection was waived. See, e.g., *O'Toole v. State*, 258 Ga. 614, 616 (4), n. 2 (373 SE2d 12) (1988).

YALE LAW LIBRARY

following statements and concessions made to the jury:

> I was getting to a question about how we feel about
> non-traditional families. Gay couples, single parents, di-
> vorce. I mean, things have changed. Gay couples raise
> children. And then you're going to have . . . DNA evidence
> that says Mr. Pyburn is [D. P.'s] daddy. And they have five
> children together, and they had an eight-year relationship
> together. And my question is what do you feel about
> non-traditional families. I mean, is that something that's so
> gross, so demented that you can't be fair. . . .

Pyburn further argues that his counsel diminished the benefit of the presumption of innocence and the right to remain silent by asking the jury, "do we really presume people to be innocent? I mean, I don't," and by suggesting that if Pyburn did not testify, "you might think . . . he should have gotten on the stand if he [is an] innocent man." Pyburn contends that through these comments and others, his counsel made unnecessary concessions and gave the jury license to ignore the presumption of innocence and to assume Pyburn's guilt.

Pyburn's trial counsel testified at the motion for new trial hearing that he had undergone training in voir dire which involved being candid with the jury in the hope of receiving candid responses. He was of the opinion that it was in Pyburn's interest for him to identify those jurors who were so sensitive to the charges of incest that they could not give Pyburn a fair trial, who would be unwilling to presume Pyburn's innocence, or who would be prejudiced against Pyburn if he chose not to testify.

Although trial counsel's attempt to obtain candid responses from the prospective jurors constituted a reasonable strategy, we conclude that certain of trial counsel's questions were not a reasonable execution of this strategy and constituted deficient performance. But that does not end our inquiry. Pyburn must also show that a reasonable probability exists that the outcome of the trial would have been different in the absence of that deficiency. See *Varner*, 285 Ga. at 301 (3).

The evidence showed that Pyburn had been told by D. P.'s mother that D. P. was his daughter, that he subsequently knowingly adopted her, that DNA tests showed a 99.9989 percent probability that he had fathered D. P.'s daughter, and that he declined to list himself on that child's birth certificate because he did not want to raise "suspicions" that he was D. P.'s father. Faced with these facts, we conclude that Pyburn has not met his burden of establishing that there is a reasonable probability that his trial counsel's performance

during voir dire had any impact on the jury's guilty verdict. Quite simply, given the overwhelming evidence of Pyburn's guilt, trial counsel's deficient performance did not undermine confidence in the outcome of the trial. See *Hardeman v. State*, 281 Ga. 220, 220-223 (635 SE2d 698) (2006); *Minton v. State*, 205 Ga. App. 430, 431 (2) (a) (422 SE2d 300) (1992).

The dissent has concluded that trial counsel's comment that he did not believe the presumption that a defendant is innocent until proven guilty amounted to a concession of Pyburn's guilt and constituted a complete breakdown of the adversarial process. We disagree. In the context of the entire voir dire examination, it was readily apparent to the jurors that trial counsel's inartful questioning was a means of probing the jurors' prejudices, and that trial counsel did indeed believe that the presumption should be applied in this case.

Pyburn's counsel began voir dire by emphasizing that "[t]he burden never shifts to us. That means that we never have to prove that we're innocent." To emphasize this point further, counsel also specifically requested that the trial court immediately charge the prospective jurors on both the state's burden of proof and the presumption of innocence. The trial court obliged counsel's request. Then, during the subsequent voir dire questioning, trial counsel went to such great lengths to ensure that the prospective jurors had not prejudged Pyburn's guilt that it prompted one prospective juror to respond:

> As far as I'm concerned, he's innocent. I came down here to serve on the jury, and he'll be innocent until proven otherwise. And that's the answer. I don't need to go through all of this of what's going to be going on. I'll make my decision up there in the jury box. And I'm ready to get on with the program.

Trial counsel then concluded his questioning by reiterating that the prospective jurors should "still apply the presumption of innocence, burden of proof beyond reasonable doubt" even in the event that Pyburn did not take the stand to testify in his own defense.

When viewed in this context, it is clear Pyburn's counsel did not concede guilt. Rather, through his questioning, he was simply attempting to identify and eliminate potential jurors who would be unwilling to keep an open mind when confronted with the egregious allegations facing his client and the considerable evidence in support thereof. And finally, the fact that Pyburn was acquitted of one of the crimes with which he was charged is inconsistent with a finding that his counsel's conduct undermined the proper functioning of the

YALE LAW LIBRARY

adversarial process. See generally *Port v. State*, 295 Ga. App. 109, 112 (2) (a) (671 SE2d 200) (2008); *Smith v. State*, 291 Ga. App. 725, 727 (2), n. 2 (662 SE2d 817) (2008).

(b) Pyburn also argues that his trial counsel was deficient for withdrawing his motion to provide funds for expert assistance in evaluating the DNA evidence. Pyburn, however, has failed to show that an expert would have identified any inadequacies in the state's DNA evidence.[3] "[U]nfounded speculation [does] not add up to a showing of professionally deficient performance by trial counsel." *Williams v. State*, 284 Ga. 849, 851 (3) (672 SE2d 619) (2009). Further, the DNA evidence was not the sole link between Pyburn and the alleged crime. Accordingly, Pyburn has not shown that his trial counsel's failure to pursue the motion for funds for expert assistance constituted deficient performance. See id. at 851-852 (3).

(c) Pyburn further contends that his trial counsel (i) improperly dictated his defense, thereby causing Pyburn to acquiesce in the decision not to testify; (ii) failed to pursue information that D. P. had a rare eye disease also shared by Kenny Mullins, a man who purportedly had a relationship with Finley at the approximate time Finley was pregnant with D. P.; and (iii) failed to bring out through cross-examination of Finley or by placing him on the stand that a significant reason for his separation from Finley at the time of D. P.'s pregnancy was his suspicions of Finley's relationship with Mullins. According to Pyburn, he would have testified that he did not know or believe that D. P. was his biological daughter. Pretermitting whether Pyburn's trial counsel was deficient as alleged, in light of the uncontested evidence that D. P. was Pyburn's adoptive as well as biological daughter and that Pyburn subsequently had sexual intercourse with her in Glynn County, there is no reasonable probability that the outcome of the trial would have differed had Pyburn testified or had counsel pursued the suggested defenses.[4] *Varner*, 285 Ga. at 301 (3).

(d) Pyburn also asserts that his counsel was deficient because he failed to pursue defenses, such as Pyburn's belief that the adoption was void and fraudulently induced, that would have increased the likelihood of a verdict based on jury nullification. However, "[a]n assessment of the likelihood of a result more favorable to the

---

[3] Significantly, at the motion for new trial hearing, Pyburn conceded that he had fathered five children, including K. P., with D. P.

[4] Furthermore, Pyburn failed to show at the hearing on motion for new trial that trial counsel could have established competent evidence of a genetic link between D. P. and Mullins in light of the alleged eye condition. At trial, Finley denied ever having a sexual relationship with Mullins and also denied knowing that Mullins had any eye condition. As previously noted, "[m]ere speculation will not support a claim of ineffective assistance of counsel." *Banta v. State*, 282 Ga. 392, 399 (6) (e) (651 SE2d 21) (2007).

defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like. A defendant has no entitlement to the luck of a lawless decisionmaker." *Strickland v. Washington*, 466 U. S. 668, 695 (III) (B) (104 SC 2052, 80 LE2d 674) (1984).

In view of the foregoing, we find that the trial court did not err in rejecting Pyburn's claim of ineffective assistance of trial counsel on the charge of incest.

*Judgment affirmed. Miller, C. J., Andrews, P. J., Johnson, P. J., Smith, P. J., and Barnes, J., concur. Phipps, J., dissents.*

PHIPPS, Judge, dissenting.

Although I agree with the majority that the evidence was sufficient to support Pyburn's conviction, I respectfully dissent to Division 2 (a) because I believe that the law requires that we presume Pyburn was prejudiced when his counsel told the jury that he did not believe the presumption that a defendant is innocent until proven guilty. Accordingly, he has shown that he received ineffective assistance of counsel and his conviction should be reversed. Because the evidence was sufficient, Pyburn can be retried.

During voir dire, counsel stated:

[T]he State has the burden of proof. We never have the burden of proof and when a person comes in and is charged with an indictment, quite often by grand jurors like this one for Mr. Pyburn, people come in and we say, ["]you jurors need to presume me innocent.["] But I know from my own experience that when I read the newspaper, for example, and — about a crime and I'm reading the newspaper, and they say the suspect's been captured, I say, ["]by God, that's great. I'm glad.["] And then we ask you to come in here and presume a person charged with a crime to be innocent and I'm wondering, do we really presume people to be innocent. *I mean, I don't. . . .* I'm wondering how many might agree with me or feel the same way I do?[5]

Although the majority finds that this statement by Pyburn's counsel constituted deficient performance, it nevertheless concludes that Pyburn cannot succeed on his ineffective assistance claim because he did not show that this deficiency prejudiced him. But, as the United States Supreme Court held in *Strickland v. Washington*,[6] "[i]n

---

[5] (Emphasis supplied.)
[6] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

certain Sixth Amendment contexts, prejudice is presumed."[7] Thus, in *Edwards v. Lewis*,[8] the Supreme Court of Georgia noted that,

> as the Supreme Court recognized in *Strickland* itself, [the] two-part test [for analyzing a claim of ineffective assistance of counsel] is inapposite under certain unusual circumstances. In some cases, prejudice is so likely that case-by-case inquiry into prejudice is not worth the cost. Thus, prejudice is presumed where there has been an actual or constructive denial of the assistance of counsel altogether.[9]

Both the United States Supreme Court and the Supreme Court of Georgia have recognized that a constructive denial of the assistance of counsel and the presumption of prejudice accompanying such a denial occur when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."[10] As the United States Supreme Court explained:

> [T]he adversarial process protected by the Sixth Amendment requires that the accused have counsel acting in the role of an advocate. The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing.[11]

To give rise to the presumption of prejudice, this breakdown in the adversarial process must be complete and pervade the judicial proceeding, rather than occurring only at specific points in the proceeding.[12]

Pyburn's counsel did not require the prosecution's case to survive the crucible of meaningful adversarial testing, as the Sixth Amendment right to counsel demands. "In all criminal cases, . . . tried under a plea of not guilty, the presumption of innocence is a fundamental doctrine of American criminal jurisprudence."[13] Pyburn, who entered a plea of not guilty, was entitled to have this

---

[7] Id. at 692 (III) (B).

[8] 283 Ga. 345 (658 SE2d 116) (2008).

[9] Id. at 349 (2) (citations and punctuation omitted).

[10] *United States v. Cronic*, 466 U. S. 648, 659 (III) (104 SC 2039, 80 LE2d 657) (1984); *Turpin v. Curtis*, 278 Ga. 698, 699 (1) (606 SE2d 244) (2004); *State v. Heath*, 277 Ga. 337, 338-339 (588 SE2d 738) (2003).

[11] *Cronic*, supra at 656-657 (II) (citation, punctuation and footnotes omitted).

[12] See *Turpin*, supra.

[13] *Kelly v. State*, 204 Ga. 239 (1) (49 SE2d 489) (1948); see *Ayala v. State*, 262 Ga. 704, 706 (1) (425 SE2d 282) (1993). See generally OCGA § 16-1-5 (codifying presumption of innocence until proven guilty beyond a reasonable doubt).

fundamental doctrine enforced by his counsel. "[E]ven when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt."[14] Pyburn's counsel conceded at the hearing on his new trial motion that his defense to the incest charge rested on relying on the burden of proof, showing reasonable doubt, and seeking jury nullification. But instead of holding the prosecution to this burden of proving Pyburn's guilt beyond a reasonable doubt, counsel expressed disbelief in the right of Pyburn, or any defendant, to be presumed innocent.

This represented a complete breakdown in the adversarial process, akin to that which some courts have held arises when counsel, without a defendant's permission, admits the defendant's guilt during trial.[15] This breakdown permeated the trial and affected the entire proceeding, causing the trial to "lose[ ] its character as a confrontation between adversaries."[16] Notwithstanding counsel's other references to the burden of proof at trial, the effects of this breakdown can be seen in the state's ability to obtain at the trial three other convictions against Pyburn for which the prosecutor later admitted that there had been no supporting trial evidence.

Because counsel's voir dire announcement of disbelief concerning the presumption of innocence prevented any meaningful adversarial testing of the charge against Pyburn, Pyburn was constructively denied counsel. Accordingly, Pyburn was not required to demonstrate actual prejudice to support his ineffective assistance claim.[17]

DECIDED DECEMBER 1, 2009.

*Grayson P. Lane*, for appellant.

---

[14] *Cronic*, supra at 656, n. 19; see *In re Winship*, 397 U. S. 358, 364 (I) (90 SC 1068, 25 LE2d 368) (1970) (Due Process Clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which the accused is charged).

[15] See, e.g., *United States v. Williamson*, 53 F3d 1500, 1511 (2) (10th Cir. 1995) (counsel's admission of client's guilt to jury represented a "paradigmatic example of the sort of breakdown in the adversarial process that triggers a presumption of prejudice") (citations omitted); *United States v. Swanson*, 943 F2d 1070, 1074 (9th Cir. 1991) (counsel's concession at trial that there was no reasonable doubt concerning whether defendant perpetrated crime lessened government's burden of proof, thereby tainting integrity of the trial and causing a breakdown of the adversarial system such that prejudice could be presumed in ineffectiveness of counsel analysis).

[16] *Cronic*, supra at 656-657.

[17] *Edwards*, supra.

YALE LAW LIBRARY

*Stephen D. Kelley, District Attorney, Charles K. Higgins, Assistant District Attorney*, for appellee.