## S10A1040. LANIER v. THE STATE.
### (702 SE2d 141)

HUNSTEIN, Chief Justice.

Appellant Raynardo Lanier was convicted of malice murder, armed robbery and aggravated assault in connection with the beating death of David Rigdon. Finding no error in the denial of Lanier's motion for new trial,[1] we affirm.

1. The evidence authorized the jury to find that Lanier and the victim spent time together over Labor Day weekend in 2006. The victim purchased crack cocaine numerous times during this period from dealer Wamikea Mikell, with the final sale occurring on Sunday

---

[1] The armed robbery and aggravated assault occurred on or about September 4, 2006 and the victim died on September 6, 2006. Lanier was indicted in Candler County on August 23, 2007 and charged with malice murder, felony murder based on aggravated assault, armed robbery and aggravated assault. He was tried before a jury and on February 6, 2008 found guilty of malice murder, armed robbery and aggravated assault. In an order entered the same day, the trial court merged the aggravated assault conviction with the conviction for malice murder and sentenced Lanier to life imprisonment as a recidivist plus a consecutive life sentence as a recidivist for armed robbery. Lanier's motion for new trial was filed on February 20, 2008, amended on January 12, 2010, and denied on February 10, 2010; his notice of appeal was timely filed. The appeal was docketed in this Court for the April 2010 term and submitted for decision on the briefs.

afternoon. Lanier and the victim indicated that they would come to Jimmy Lee Scott's house that evening, where Mikell was cooking dinner, but Lanier arrived alone. Lanier asked for a hammer; he left the house for a while, returned with a wallet draped over the top of his sweat pants and asked Mikell for a ride to meet his wife. Along the way, Mikell stopped the car and Lanier got out. After a brief period of time, Lanier got back in the car, and the two returned to Scott's house.

The victim was found lying face down in a pool of blood inside the front door of his residence in the early hours of Tuesday morning and was transported to the hospital. Lanier's name came up when investigating officers spoke to those at the scene, and it was determined that he was in an adjacent apartment. A GBI special agent went to the apartment and talked to Lanier, who consented when the agent asked to look at his clothing that was lying on a couch. Lanier also retrieved a pair of his shoes from the side of the couch, and the agent noticed three small blood spatter droplets on one shoe.

The victim died the following day from multiple severe blunt impact injuries to the head, with wounds consistent with the use of a hammer as a weapon. Both Lanier and Mikell showed investigating officers the spot at which they had stopped on their Sunday night drive, and the victim's wallet was recovered at that location. Subsequent DNA analysis determined that the blood on Lanier's shoe was that of the victim.

Viewed in the light most favorable to the verdict, we conclude that the evidence was sufficient for a rational trier of fact to find Lanier guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Lanier contends that the trial court erred by failing to grant his motion for a mistrial after an investigating officer testified on cross-examination that Lanier gave the officer a statement "right after he had talked with his parole officer."[2] Although Lanier argues that this reference to parole constituted an impermissible comment on his character, see OCGA § 24-2-2, we have held that a passing reference to a defendant's record does not place his character in evidence. *Isaac v. State*, 269 Ga. 875 (5) (505 SE2d 480) (1998). Moreover, the testimony at issue followed defense counsel's question regarding the content, not the timing, of Lanier's statement, and " '(a) nonresponsive answer that impacts negatively on a defendant's character does not improperly place (his) character in issue.'

---

[2] Defense counsel declined the trial court's offer to give a curative instruction and excepted to the denial of the motion.

[Cits.]" *Walker v. State*, 282 Ga. 703, 705 (2) (653 SE2d 468) (2007). Accordingly, the trial court did not abuse its discretion by denying Lanier's mistrial motion. See *Junior v. State*, 282 Ga. 689 (4) (653 SE2d 481) (2007).

3. Lanier claims that he received ineffective assistance of trial counsel in two respects. In order to prevail on such a claim, Lanier must show both that counsel's performance was professionally deficient and that there is a reasonable probability that the outcome of his trial would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Dockery v. State*, 287 Ga. 275 (5) (695 SE2d 599) (2010). We conclude that Lanier has failed to make the requisite showings.

(a) The State's expert in DNA analysis acknowledged on cross-examination that she was aware of one unrelated incident at the Savannah crime lab in which DNA samples were inadvertently switched. Lanier argues that because DNA evidence played a critical role in his case, trial counsel was deficient in failing to obtain either an independent test of the blood on his shoes or an independent review of the lab's practices and procedures. However, Lanier did not produce a DNA expert who would testify that the State's DNA evidence was defective,[3] and his unfounded speculation as to the potential for a test result different from that introduced at trial does not constitute a showing of professionally deficient performance by counsel. *Williams v. State*, 284 Ga. 849 (3) (672 SE2d 619) (2009). Lanier's reliance on *Dingler v. State*, 281 Ga. App. 721 (1) (637 SE2d 120) (2006) in this regard is misplaced for the reasons set forth in *Williams*, supra at 851-852.

(b) Lanier sought to impeach Mikell's testimony with evidence of two prior convictions: a 2007 conviction for cocaine possession and a 1995 conviction for aggravated assault. The trial court admitted the 2007 conviction, but ruled the 1995 conviction inadmissible because it was more than ten years old and Lanier had not provided the State with the necessary written notice of his intent to use this evidence. See OCGA § 24-9-84.1 (b).[4] Lanier argues that counsel was ineffec-

---

[3] It appears from the record that the motion for new trial was decided on the briefs after neither party accepted the trial court's written offer to schedule oral argument.

[4] OCGA § 24-9-84.1 (b) provides:

Evidence of a [witness's prior felony conviction] is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness . . . from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old, as calculated in this subsection, is not admissible unless the proponent

tive in failing to provide the required notice because challenging Mikell's credibility was crucial, given her unexpected testimony that Lanier confessed to her during their Sunday night drive that he beat the victim with a hammer. However, the trial court did not err by finding that even if the 1995 conviction had been admitted and the jury had disregarded Mikell's testimony, there remained evidence sufficient to convict Lanier. See *Allen v. State*, 286 Ga. 392 (5) (a) (687 SE2d 799) (2010). Moreover, Mikell's trial testimony conflicted with her prior statements, and she admitted on the stand that she was a crack dealer, that she was "pretty high" on drugs on the night in question, and that her memory of that weekend was "really mixed up." Under these circumstances, the additional impeachment value of a 13-year-old aggravated assault conviction would have been minimal at best. Thus, Lanier has failed to establish a reasonable probability that the outcome of his trial would have been different had counsel given notice of intent to use the 1995 conviction for impeachment purposes.

4. Finally, Lanier argues that his trial counsel was laboring under a conflict of interest because counsel was the Assistant District Attorney involved in Lanier's November 2001 negotiated plea of guilty to three counts of selling cocaine. The record reflects that counsel noticed this fact for the first time during sentencing, when Lanier's prior convictions were considered for purposes of recidivist treatment. Counsel stated in his place that he had no recollection of Lanier or the plea; Lanier had not raised the issue.

> The question of whether an attorney labors under an actual conflict of interest for purposes of the Sixth Amendment [right to conflict-free counsel] generally arises when the purported conflict stems from the attorney's representation of multiple defendants concurrently. [Cits.] This Court has also found a Sixth Amendment actual conflict to occur when the attorney's duty of loyalty to his client conflicts with the attorney's duty to the attorney's employer. [Cits.]

(Footnote omitted.) *White v. State*, 287 Ga. 713 (4) (a) (699 SE2d 291) (2010). Trial counsel's representation of the State in a guilty plea entered almost five years before the crimes at issue does not fall within these parameters. Even assuming, arguendo, the existence of an actual conflict of interest, Lanier would be required to demonstrate that the conflict "significantly affected counsel's perfor-

gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

mance," id., and this he has failed to do. The record supports the trial court's finding that trial counsel did not remember his work for the State against Lanier until after the jury verdict had been rendered, and Lanier has not alleged that counsel's performance at sentencing was affected by the discovery of this information. Accordingly, this enumeration of error has no merit.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 1, 2010.

*Peter D. Johnson*, for appellant.

*S. Hayward Altman, District Attorney, Tony A. May, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.