**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 3, 2014**

# In the Court of Appeals of Georgia

A14A1207. BARSTAD v. THE STATE.

MILLER, Judge.

Following a jury trial, James Barstad was convicted of burglary (OCGA § 16-7-1 (a) (2010)), theft by taking (OCGA § 16-8-2), and obstruction of an officer (OCGA § 16-10-24 (b)).[1] Barstad appeals from the denial of his motion for new trial, alleging the following: the evidence did not support his convictions; he received ineffective assistance of counsel; and the trial court erred in sentencing him as a recidivist. After a thorough review of the record, we affirm.

"Following a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent."

---

[1] The jury acquitted Barstad of additional charges of burglary and theft by taking.

(Citation omitted.) *Pyburn v. State*, 301 Ga. App. 372 (687 SE2d 909) (2009). So viewed, the evidence shows that between June 30 and July 6, 2010, the victim and her family were on vacation. When the victim returned to her house in Douglas County, she noticed that the house had been ransacked and a window was broken. The victim discovered that the following had been stolen from her house: $300-$400 in cash, two flat screen televisions, all of the victim's jewelry, two Coach purses, a Wii gaming system and several Wii games. The victim also noticed an open Coke Zero can on the kitchen counter. The victim testified that the soda can was not on the counter when she left on vacation.

The victim pointed out the Coke Zero can to the investigating officer, who took the can into evidence. The can was subsequently processed for DNA testing. The officer also surveyed the house and concluded that the assailant had entered the victim's house via a downstairs window.

Another officer, who had been investigating a series of burglaries in Douglas County, suspected that Barstad was involved in the crimes. Barstad lived with his girlfriend, Barbara Black, during the time of the burglary in this case. The investigating officer went to Black's residence in late July, and she informed the officer that Barstad was in Florida. After the officer advised Black about his

2

investigation, Black gave police officers consent to search her house. During the search, police officers discovered two watches, a pearl necklace, and a silver bracelet that the victim later identified as having been stolen from her house.

After Barstad returned from Florida, police officers returned to Black's house in an attempt to execute an arrest warrant on Barstad. When Barstad answered the door, a police officer identified himself, informed Barstad that he had an arrest warrant, and asked Barstad to turn around and put his hands behind his back. Barstad stepped further into the house and refused to stop when requested to do so. The police officer then warned Barstad that he would use his taser if Barstad did not stop moving. Barstad continued to move towards the back of the house, and, when he reached for the back door, the police officer used his taser to subdue Barstad. Another police officer then arrested Barstad.

A buccal swap was subsequently taken from Barstad, and the buccal sample was compared to the DNA found on the Coke Zero can found in the victim's house. A forensic scientist concluded that the DNA found inside the can was an exact match for Barstad or his identical twin.

At trial, the State presented similar transaction evidence showing that, in June 2008, Barstad committed the offense of attempted burglary in Douglas County.

3

During that offense, a witness reported suspicious behavior when Barstad took the screen off a window to a house. Following the presentation of evidence, the jury found Barstad guilty of burglary, theft by taking, and obstruction of a law enforcement officer.

1. Barstad contends that the trial court erred in concluding that the evidence was sufficient to sustain his convictions for burglary and theft by taking.[2] Specifically, Barstad argues that the only evidence linking him to the crimes was the DNA sample, and the State failed to exclude his brother as the perpetrator of the crimes. Barstad's claim is wholly without merit.

A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within a building or

---

[2] Barstad does not reference or provide argument or legal authority addressing the sufficiency of the evidence as to his obstruction conviction. Therefore, Barstad has abandoned any challenge he may have had regarding the obstruction offense. See *Jones v. State*, 289 Ga. App. 219, 221 (1), n.1 (656 SE2d 556) (2008). Nevertheless, we have reviewed the trial evidence and conclude that the evidence was sufficient to convict Barstad of obstructing a law enforcement officer. See *Cofield v. State*, 304 Ga. App. 165, 168 (3) (695 SE2d 696) (2010) (flight after a lawful command to stop constitutes obstruction of an officer).

4

any room or part thereof. OCGA 16-7-1 (a) (2010). A person commits the offense of theft by taking when he unlawfully takes the property of another. OCGA § 16-8-2.

> For a conviction based on circumstantial evidence to stand,
>
> the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused. However, it is well established that questions of reasonableness are generally for the fact-finder and where the circumstantial evidence is sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, the appellate court will not disturb the fact-finder's guilty verdict unless it is unsupportable as a matter of law.

(Punctuation and footnotes omitted.) *Roberts v. State*, 309 Ga. App. 681, 683 (1) (710 SE2d 878) (2011). Evidence of recent, unexplained possession of stolen goods may be sufficient to give rise to an inference that the defendant committed the offenses of burglary and theft by taking. See *Chambers v. State*, 288 Ga. App. 550, 551 (654 SE2d 451) (2007) (burglary); *Jefferson v. State*, 273 Ga. App. 61, 63 (1) (614 SE2d 182) (2005) (theft by taking).

In this case, Barstad's DNA, or that of his identical twin, was found on the Coke Zero can left inside the victim's house in which a window had been broken and numerous items stolen. There was no evidence to explain how the DNA was left at the scene of the crime other than when the offenses were committed. Although

5

Barstad argues that the DNA could have possibly been left by his brother, a forensic biologist testified that only identical twins would have the same DNA, and there is no evidence that Barstad had an identical twin.[3] Moreover, "[t]he State is not required to remove every possibility of innocence of the crime charged, and it is not required to disprove bare possibilities that the crime could have been committed by someone else." (Citation omitted.) *Nangreave v. State*, 318 Ga. App. 437, 439 (1) (734 SE2d 203) (2012).

Nevertheless, the DNA evidence was not the only evidence from which the jury could infer Barstad's guilt. The victim's stolen property was found in a house where Barstad was residing, and the homeowner stated that the recovered items were not hers and that Barstad would often hide things inside her house. Additionally, when police officers tried to execute an arrest warrant on Barstad, he attempted to flee, and such evidence provides circumstantial evidence of guilt. See *Durham v. State*, 309 Ga. App. 444, 445 (1) (710 SE2d 644) (2011).

---

[3] At the motion for new trial hearing, Barstad conceded that he did not have an identical twin.

6

Based on the above evidence, along with the evidence that Barstad committed a similar offense, the jury was authorized to conclude Barstad committed the offenses of burglary and theft by taking. See *Roberts*, supra, 309 Ga. App. at 683 (1) (evidence sufficient to sustain conviction for burglary where defendant's blood was found at the scene of a business that had been broken into and defendant had committed similar transactions); *Jefferson*, supra, 273 Ga. App. at 63-64 (1) (evidence of unexplained recent possession of stolen property and similar transactions authorized the jury to find defendant guilty of theft by taking).

2. Barstad contends that the trial court erred by sentencing him as a recidivist because the State failed to provide him with notice of the offenses it intended to use as recidivism evidence and the tendered convictions did not meet the statutory definition. We disagree.

Here, in its discovery response filed five months prior to trial, the State included Barstad's Georgia Crime Information Center ("GCIC") report, and the State specifically stated that all convictions would be used in aggravation of sentencing and that it would recommend a sentence of "60 years to serve 20 years pursuant to [the] repeat offender provisions of [OCGA] § 17-10-7 (c)[.]" Around the same time that it filed its discovery response, the State served Barstad with a specific notice of intent

7

to seek repeat offender punishment, listing Barstad's prior convictions for attempted burglary, possession of cocaine, felony shoplifting, and burglary.

At the sentencing hearing, Barstad objected to the possession of cocaine conviction, arguing that he was not the defendant listed in that case. The trial court continued the sentencing hearing to provide the State an opportunity to prove identity. At a subsequent hearing, the State conceded that the possession of cocaine conviction was erroneously listed on the notice of intent. The State then presented proof that Barstad had two felony convictions in Florida for grand theft and aggravated assault upon a police officer. Barstad conceded that he was convicted of grand theft and aggravated assault, but objected to the consideration of these convictions on the grounds that he had not been provided notice that these convictions would be used for recidivist purposes. The trial court overruled Barstad's objection, concluding that the State had provided adequate pre-trial notice that it was seeking recidivist punishment based on, among other things, its discovery filing that included Barstad's GCIC report and specifically indicated that it would use the convictions in that report to seek recidivist punishment. The trial court then sentenced Barstad as a repeat offender under OCGA § 17-10-7 (c), requiring him to serve the

8

maximum sentence for burglary without the eligibility for parol until he served the maximum sentence.

(a) Barstad's argument that he was not provided adequate notice is without merit. OCGA § 17-16-4 (a) (5) provides that "[t]he prosecuting attorney shall, no later than ten days prior to trial, or at such time as the court orders but in no event later than the beginning of the trial, provide the defendant with notice of any evidence in aggravation of punishment that the [S]tate intends to introduce in sentencing." In this case, the State provided notice several months before trial that it was seeking recidivist punishment and attached Barstad's GCIC report. This Court has repeatedly held that convictions listed on an attached GCIC report suffices as proper notice of aggravating sentencing evidence. See, e.g., *Parks v. State*, 294 Ga. App. 646, 652 (11) (669 SE2d 684) (2008); *Young v. State*, 245 Ga. App. 684, 686-687 (3) (538 SE2d 760) (2000).

Barstad provides no authority, nor could we find any, to support his contention that the State's ability to pursue recidivist punishment is strictly limited to those convictions it listed in its specific intent notice. Notwithstanding Barstad's contentions, the sufficiency of the State's notice is a matter of substance over form, because "[t]he important requirement is that the defendant be given an unmistakable

9

advance warning that the prior convictions will be used against him at sentencing so that he will have enough time to rebut or explain *any* conviction record." (Citations, punctuation, and footnotes omitted; emphasis supplied.) *Evans v. State*, 290 Ga. App. 746, 748 (2) (660 SE2d 841) (2008). Given that the State filed multiple notices indicating that it was seeking recidivist punishment and it informed Barstad that all of his convictions could be used for such purposes, the trial court did not err in concluding that the State's notice was adequate.

(b) Barstad next contends that the trial court could not combine his attempted burglary conviction in Georgia with his two Florida convictions for grand theft and aggravated assault upon a police officer. Barstad argues that OCGA § 17-10-7 (c) authorizes a recidivist sentence when a defendant has three prior felony convictions that are either all from Georgia or all from a foreign jurisdiction. We cannot, however, reach this issue because Barstad failed to timely raise it below for consideration at his sentencing hearing or at his motion for new trial hearing. See *von Thomas v. State*, 293 Ga. 569, 572-573 (2) (748 SE2d 446) (2013) (noting that the Georgia Supreme Court and this Court have routinely held that a defendant may waive challenges to a recidivist sentence). See also *Mister v. State*, 286 Ga. 303, 309

(8) (687 SE2d 471) (2009) (concluding that defendant waived claim that sentence constituted cruel and unusual punishment by not raising the issue below).

3. Barstad also contends that trial counsel was ineffective for failing to request funds to hire an independent DNA expert to challenge the DNA evidence obtained at the victim's house.[4] We disagree.

In order to succeed on a claim of ineffective assistance of counsel,

[Barstad] must show that his counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there is a reasonable probability the outcome of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

(Citations and punctuation omitted.) *Pyburn*, supra, 301 Ga. App. at 373 (2).

Although Barstad argues that a DNA expert would have likely changed the outcome of his trial, he did not call an expert to testify at the motion for new trial hearing. Consequently, Barstad did not establish that a DNA expert's testimony

---

[4] In a separate part of his brief, Barstad seeks to raise additional issues that were not enumerated as error by appellate counsel. Since Barstad is represented by counsel and has no right to represent himself at the same time, we consider only the issues presented by counsel because a party is not permitted to raises issues on appeal separate from his counsel. See, e.g., *Vadde v. State*, 296 Ga. App. 405, 410 (4) (674 SE2d 323) (2009); *Peterkin v. State*, 222 Ga. App. 329, 330 (1) (474 SE2d 231) (1996).

11

would have yielded a different result. See *Thornton v. State*, 305 Ga. App. 692, 694 (1) (a) (700 SE2d 669) (2010) (defendant failed to show that trial counsel's failure to obtain a continuance to obtain fingerprint analysis prejudiced him because he did not call an expert witness at the motion for new trial hearing). Moreover, the DNA evidence was not the sole link between Barstad and the crimes because the victim's stolen property was found at Barstad's residence. Therefore, Barstad has failed to show that trial counsel's failure to request funds for a DNA expert constituted ineffective assistance of counsel. See *Pyburn*, supra, 301 Ga. App. at 376 (2) (b) (defendant failed to establish ineffective assistance of counsel where he failed to show that expert would have identified any inadequacies in the State's DNA evidence and where DNA evidence was not the sole link between defendant and crime). Accordingly, we affirm.

*Judgment affirmed. Doyle, P. J., and Dillard, J., concur.*