## A09A1100. FLEWELLING v. THE STATE.
(685 SE2d 758)

BERNES, Judge.

Following a jury trial, Brad Flewelling appeals his conviction for two counts of aggravated child molestation and one count of statutory rape. He contends that (1) the evidence was insufficient to

---

sustain his aggravated child molestation convictions; (2) the trial court erred in denying his motion to suppress, which alleged evidence was seized pursuant to a defective search warrant; (3) the trial court erred in excluding a motel registration card obtained by police during the investigation; and (4) his trial counsel provided ineffective assistance. We discern no error and affirm.

> On appeal from a criminal conviction, we view the evidence in a light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

(Punctuation and footnote omitted.) *Steverson v. State*, 276 Ga. App. 876 (1) (625 SE2d 476) (2005).

So viewed, the evidence at trial showed that 30-year-old Flewelling met the victim, 15-year-old K. W., while she was visiting her father in Florida during the summer of 2005. During the last week of her visit, K. W. became upset after she learned that a close family friend had died. Flewelling offered to console her. Once they were alone, Flewelling told K. W. that "he had feelings for [her]" and initiated sexual activity with her. Throughout the remaining nights of that week, K. W. snuck out of her father's home, met with Flewelling, and engaged in sexual activity with him. Before leaving Florida, K. W. gave Flewelling a pair of her underwear and a necklace bearing the initial "K."

After K. W. returned to her mother's home, she maintained contact with Flewelling, talking to him daily on the telephone. When K. W.'s mother inquired about the identity of the telephone caller, K. W. told her she was speaking with an 18-year-old Floridian named Brad.

During the weekend of August 13-14, 2005, Flewelling made arrangements to visit K. W. Flewelling drove from Florida to Georgia and checked into a motel. K. W. told her mother that she was spending the night at a friend's house. Instead, Flewelling picked K. W. up from school and took her to his motel room. At some point, Flewelling and K. W. went to a store where Flewelling purchased food, condoms, and a large bottle of an alcoholic beverage. After they returned to the motel room, Flewelling and K. W. engaged in oral sex and sexual intercourse.

In the meantime, K. W.'s mother retrieved a voicemail message that Flewelling had left for K. W. After K. W. returned home the next morning, her mother confronted K. W. about her relationship with

Flewelling. During the course of the confrontation, K. W. disclosed her sexual activity with Flewelling and Flewelling's actual age. K.W.'s mother called the police.

During the ensuing investigation, the police officers interviewed K. W. She told them where the latest molestation incident took place and then drove with the officers to the motel. When they arrived at the motel, K. W. pointed out Flewelling's truck, which was still parked outside the motel room. Flewelling was located in the motel room and arrested.

The police obtained search warrants for the motel room and Flewelling's truck. In the motel room, the investigating detective found a partially-consumed alcoholic beverage and several condoms, consistent with K. W.'s report. He also found Flewelling's wallet, which contained a love letter that K. W. had written and a business card bearing K. W.'s home address.

In the truck, the detective discovered K. W.'s underwear and her pendant necklace. The detective also saw where K. W. had written her name in black ink on the headliner of the truck.

Flewelling was indicted, tried, and convicted of two counts of aggravated child molestation and statutory rape. He filed a motion for new trial, which the trial court denied.

1. Flewelling contends that the evidence was insufficient to sustain his aggravated child molestation convictions.[1] We disagree.

"A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a) (1). "Child molestation advances to aggravated child molestation with the addition of either physical injury to the child or sodomy. Sodomy, in turn, is defined as any sexual act involving the sex organs of one person and the mouth or anus of another." (Citation and punctuation omitted.) *Metts v. State*, 297 Ga. App. 330, 331 (1) (a) (677 SE2d 377) (2009). See OCGA §§ 16-6-2 (a) (1); 16-6-4 (c). The respective counts of the indictment charged Flewelling with having committed aggravated child molestation "by performing an act of sodomy . . . involving the penis of [Flewelling] and the mouth of the [victim]" and "by performing an act of sodomy . . . involving the mouth of [Flewelling] and the vagina of the [victim]."

In describing the sexual activity with Flewelling, the victim testified that "there was oral sex between both of us" and oral sex "from me to him and from him to me." In her videotaped interview

---

[1] Flewelling does not challenge his statutory rape conviction.

508

with the detective, which was played for the jury at trial, the victim further described the oral sex, stating that Flewelling did not wear a condom and that he had ejaculated. Flewelling argues that since the victim's testimony did not describe the specific body parts involved in the acts of sodomy as alleged in the indictment, his convictions cannot stand. His claim is without merit in the context of this case.

Witnesses are not required to describe the acts constituting the commission of crimes in statutory or technical language in order to prove the commission of such acts. See *Anderson v. State*, 142 Ga. App. 282, 282-283 (1) (235 SE2d 675) (1977). Rather, the terms used by witnesses to describe criminal acts may be considered in context to provide meaning, and jurors "can be presumed to have some knowledge of slang expressions in common parlance in the vernacular." Id. at 283 (1). See also *Carolina v. State*, 276 Ga. App. 298, 302 (1) (b) (623 SE2d 151) (2005). The term "oral sex," used by the victim to describe the sexual activity, is defined as "oral stimulation of the genitals." Merriam-Webster's Online Dictionary, *http://www.merriam-webster.com/dictionary/oral sex*. The victim's testimony using the term "oral sex" authorized the jury to infer contact between mouth and genitals, in accordance with the term's common and plain meaning, and established the aggravated child molestation charges as alleged in the indictment. See *Metts*, 297 Ga. App. at 331-332 (1) (a) (victim's testimony that defendant forced her to perform oral sex on him until he ejaculated was sufficient to sustain the aggravated child molestation conviction). See, e.g., *Eller v. State*, 294 Ga. App. 77, 79 (2) (668 SE2d 755) (2008) (victim's testimony that she had "oral sex" with defendant after being threatened was sufficient to authorize the aggravated sodomy conviction); *Carolina*, 276 Ga. App. at 302 (1) (b) (the jury was authorized to infer that by use of the term "sex," the victim's description meant oral sodomy when considered in context); *Williams v. State*, 195 Ga. App. 476, 480 (4) (394 SE2d 123) (1990) (trial testimony established that the victim had been forced to commit oral sex, "from which it [could] only reasonably be deduced that defendant forced [the victim] to place her mouth on his penis"); *Anderson*, 142 Ga. App. at 282-283 (1) (use of the term "blow job" was sufficient to describe sodomy).

2. Flewelling also contends that the trial court erred in denying his motion to suppress the evidence seized from his motel room pursuant to a search warrant. He argues that the affidavit supporting the search warrant was insufficient in that it (a) failed to disclose the source of the information, (b) omitted information regarding the source's credibility, and (c) failed to disclose the existence of evidence

contradicting a material fact provided by the victim. Again, we discern no error.

> In determining whether probable cause exists for the issuance of a search warrant, the magistrate's task is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

(Citation and punctuation omitted.) *Smith v. State*, 274 Ga. App. 106, 107 (1) (616 SE2d 868) (2005). On appeal, this Court's review "is limited to determining if the magistrate had a 'substantial basis' for concluding that probable cause existed to issue the search warrant." (Citation and punctuation omitted.) Id. The evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings as to disputed facts and credibility will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review. *State v. Palmer*, 285 Ga. 75, 78 (673 SE2d 237) (2009); *State v. Owens*, 285 Ga. App. 370 (646 SE2d 340) (2007). We afford substantial deference to a magistrate's decision to issue a search warrant based upon a finding of probable cause. *Palmer*, 285 Ga. at 78.

The affidavit in this case alleged in pertinent part as follows:

> Bradford Flewelling, [t]he male 30 year old suspect, . . . drove from his residence in Tampa[,] Florida, to th[e] [motel] . . . for a pre-arranged encounter with a 15 year old juvenile. The suspect engaged in vaginal and oral sex with the 15 year old female in room 108 at the [motel][.] . . . The 15 year old female was in the hotel room from about 2300 hours on August 13, 2005 to about 1100 hours on August 14, 2005. The suspect provided the 15 year old female with an alcoholic beverage described as possibly a Smirnoff Ice wine cooler type drink.

> From the investigation, it has been determined that the suspect met the 15 year old female during the month of July 2005 in Tampa[,] Florida when the 15 year old female was visiting her biological father for the summer. The suspect engaged in intercourse with the female on two occasions during July of 2005 in Florida. The suspect has maintained

contact with the 15 year old female via cellular phone, cellular phone voice mail, and cellular phone text messages. On July 17, 2005[,] the 15 year old female came back to Georgia to her primary residence with her biological mother. The suspect maintained contact with the 15 year old and arranged [a] meeting at the [motel] . . . on August 13, 2005. The suspect performed oral and vaginal intercourse with the 15 year old female on [this] occasion[ ].

The 15 year old female [was] experiencing her menstrual period during the most recent sexual encounter, and there may be evidence of menstrual blood, condoms, and condom wrappers in the room.

The affidavit specified the location to be searched by the name of the motel, the address, and the room number. The affidavit further listed the items to be searched as tangible evidence of the aggravated child molestation offense, including condoms, condom wrappers, and alcoholic beverages.

(a) There is no merit to Flewelling's claim that the search warrant affidavit was insufficient because it failed to disclose the source of the information. Although the written affidavit did not identify the victim as the source of the information, the detective who procured the warrant identified the victim as the source in oral testimony presented to the issuing magistrate.[2] The detective's oral testimony identifying the victim as the source of the information was sufficient to supplement the statements in the written affidavit. *Franklin v. State*, 135 Ga. App. 718 (1) (218 SE2d 641) (1975) ("The magistrate may consider oral testimony as well as the affidavit in issuing a search warrant.") (citation and punctuation omitted).

Flewelling argues that the detective's suppression hearing testimony that he provided oral testimony to the magistrate is contradicted by the fact that there was no marking in the area of the application form designated to give notice that "oral testimony, given under oath, [was] received and recorded." Significantly, there was also no marking in the area of the form designated to give notice that "oral testimony [was] not considered." Nevertheless, the resolution of this evidentiary conflict and the determination of the detective's credibility as a witness was within the province of the trial court and must be accepted by this Court unless clearly erroneous. *Owens*, 285 Ga. App. at 370; *King v. State*, 263 Ga. 741, 743 (1) (438 SE2d 620) (1994). Given the record in this case, we cannot say that the trial

---

[2] At the suppression hearing, the detective testified that the victim's name was not revealed in the written affidavit in order to protect her identity as a child victim.

court's decision denying the motion to suppress on this ground was erroneous.

(b) Flewelling further claims that the affidavit was insufficient due to its omission of information regarding the victim's credibility. Flewelling argues that the detective was aware that the victim had lied to her parents concerning her whereabouts during the overnight visits with Flewelling, and that this information impacting the victim's credibility should have been presented to the magistrate. This claim affords no basis for reversal.

It is true that a magistrate's determination that probable cause exists for the issuance of a search warrant must be based upon "all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information." (Citation and punctuation omitted.) *Palmer*, 285 Ga. at 77; *DeYoung v. State*, 268 Ga. 780, 786-787 (7) (493 SE2d 157) (1997); *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984). But, our precedent establishes an important distinction between circumstances in which the information comes from the alleged victim, as opposed to a confidential hearsay informant. When the source of the information provided in the affidavit is based upon the personal observation of the alleged victim of the crime, corroboration to establish the reliability of the victim's report is not necessary. See *Smith*, 274 Ga. App. at 109; *Miller v. State*, 219 Ga. App. 213, 216 (2) (464 SE2d 621) (1995); *Peacock v. State,* 170 Ga. App. 309, 310 (1) (316 SE2d 864) (1984); *Wilcoxen v. State*, 162 Ga. App. 800, 801 (2) (292 SE2d 905) (1982). See also *Devier v. State*, 247 Ga. 635, 638 (5) (277 SE2d 729) (1981) (holding that the requirement to show the reliability of the informant does not apply with full force to hearsay allegations which come from someone other than a confidential informant). Accordingly, "[b]ecause the non-confidential hearsay [informant was the victim] of the crimes, there was no requirement that [her] reliability be further corroborated in order to show that probable cause existed." (Citation and punctuation omitted.) *Smith*, 274 Ga. App. at 109. See also *Miller*, 219 Ga. App. at 216 (2); *Peacock*, 170 Ga. App. at 310 (1).

As to the omitted information, Flewelling bore the burden of showing not only that the omitted information was material to the determination of probable cause, but also that the material information was intentionally or recklessly omitted for the purpose of misleading the magistrate. See *Macias v. State*, 292 Ga. App. 225, 231 (2) (b) (664 SE2d 265) (2008); *Houston v. State*, 242 Ga. App. 114, 115-116 (1) (527 SE2d 619) (2000). Flewelling failed to meet his burden in this case. The evidence presented at the motion to suppress hearing failed to establish that the detective deliberately or recklessly omitted any information from the affidavit.

Furthermore,

> [i]f a court determines that an affidavit submitted contains material misrepresentations or omissions, the false statements must be deleted, the omitted truthful material must be included, and the affidavit must be reexamined to determine whether probable cause exists to issue a warrant. Even doubtful cases should be resolved in favor of upholding a magistrate's determination that a warrant is proper.

(Citation and punctuation omitted.) *Sullivan v. State*, 284 Ga. 358, 361 (2) (667 SE2d 32) (2008). See also *Palmer*, 285 Ga. at 78. In this case, probable cause to issue the search warrant remained even if the information concerning the victim's credibility had been included with the other facts considered by the magistrate. That the teen-aged victim deceived her parents as to her whereabouts when she was with Flewelling does not render it less probable that the crimes occurred or that evidence of the crimes would be found in the motel room. The evidence shows that the victim provided detailed information about the crime, the location of the recent sexual encounter, and the corroborating evidence likely to be discovered at that location. The warrant affidavit likewise contained similar details, setting forth the date, time, location, person committing the crime, and evidence likely to be found at the location with a great deal of specificity. The details provided by the victim and alleged in the affidavit favored a finding that the victim's report was reliable to justify further investigation through the issuance of a search warrant.

(c) Flewelling further claims that probable cause for the search warrant did not exist due to the omission in the affidavit of information regarding the motel registration card. Flewelling argues that the registration card, showing a check-in date of August 14, 2005 at 11:15, was exculpatory and directly contradicted the victim's claim that she was with him at the motel room on the prior evening of August 13, 2005. Again, we discern no merit to Flewelling's claim.

As an initial matter, the evidence is unclear as to whether the detective had obtained the motel registration card prior to seeking the search warrant. At the motion to suppress hearing, the detective testified that although he had received information about the motel registration card before he applied for the search warrant, he did not actually obtain possession of the registration card until later in his investigation. Moreover, the detective stated that when he sought the search warrant, he had not confirmed the accuracy of the registration card and thought that the registration card's information was mistaken. The registration card failed to designate whether

the purported check-in time was in the morning or evening, and to the extent that it reflected an evening check-in time, it was clearly inaccurate since the officers had already arrived at the motel for the investigation and arrest by that time.

This evidence does not satisfy Flewelling's burden of proving that the detective intentionally or recklessly omitted the motel registration card from the information provided to the magistrate. And, at the time the search warrant was requested, the registration card merely presented an unconfirmed potential conflict in the evidence. Even if the conflicting motel registration card had been provided to the magistrate, probable cause for the search warrant nonetheless existed based upon the victim's report of the crimes. See, e.g., *Macias*, 292 Ga. App. at 231 (2) (b) (finding probable cause to support the issuance of a search warrant despite contradictory evidence purporting to explain the reason for defendant's possession of the contraband evidence).

3. Next, Flewelling claims that the trial court erred in excluding the motel registration card from the evidence at trial. As a prerequisite for the admission of the motel registration card, Flewelling was required to lay a proper foundation under the hearsay exception for business records. See OCGA § 24-3-14 (b). The admission of a business record requires that "the foundation must be laid through the testimony of a witness who is familiar with the method of keeping records and who can testify thereto and to facts which show that the entry was made in the regular course of business at the time of the event or within a reasonable time thereafter." (Citation and punctuation omitted.) *Tindol v. State*, 284 Ga. App. 45, 47 (3) (643 SE2d 329) (2007).

Flewelling failed to call as a trial witness anyone, such as a motel employee, who was familiar with the authenticity of the motel registration card and the methods for generating and keeping the motel's business records. Instead, Flewelling attempted to introduce the motel registration card through the testimony of the detective, who was not familiar with the information needed to lay a proper evidentiary foundation for its admission. As a result of the lack of foundation, the motel registration card was properly excluded from the evidence at trial. See *Hall v. State*, 244 Ga. 86, 92 (4) (259 SE2d 41) (1979); *Mullinax v. State*, 231 Ga. App. 534, 535 (2) (499 SE2d 903) (1998). Compare *Neill v. State*, 247 Ga. App. 152, 153 (1) (543 SE2d 436) (2000).

4. Lastly, Flewelling claims that his trial counsel provided ineffective assistance. To prevail on his claim of ineffective assistance of counsel, Flewelling must show both that his counsel was deficient and that there was a reasonable probability that the outcome of the trial would have been different but for his counsel's deficiency. See

*Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Braithwaite v. State,* 275 Ga. 884, 885 (2) (b) (572 SE2d 612) (2002). A failure to make either of these showings precludes a finding that counsel was ineffective. *Braithwaite,* 275 Ga. at 885 (2) (b). There is a strong presumption that counsel was effective, and we will uphold the trial court's determination that trial counsel was effective unless that determination was clearly erroneous. Id.; *Kania v. State,* 280 Ga. App. 356, 360 (5) (634 SE2d 146) (2006).

Flewelling argues that his counsel erred by failing to object to the prosecutor's allegedly burden-shifting closing argument, set forth as follows:

> And as an adult man, he is supposed to take on this extra colloquial responsibility if he finds himself in a situation where a fifteen year old is making advances at him. He has got to stop it. He has to withdraw from that situation. He has got to make sure that that child knows there is not going to be anything going on between the two of them. And if he does not, he has broken the law. No other way to describe it.
>
> We can't allow him to shirk his responsibility because we might have some resentment about the fact that this child willingly had sex with him. If you resent that, fine, but you can't allow this man to get away with what he has done. He has a duty which he ignored, and having ignored that duty, it now becomes your duty to hold him responsible for it.

The challenged argument was a continuation of the state's theme that "grown men can't have sex with children under the age of sixteen" and did not shift the burden of proof to Flewelling. When considered in its total context, the argument properly addressed evidence that the sexual activity was consensual[3] and was a proper rebuttal to Flewelling's closing argument that he "ma[de] a bad decision as to how to deal with 15 year olds."

Moreover, at the motion for new trial hearing, trial counsel recalled the circumstances of the closing argument and testified that he decided against objecting to the prosecutor's argument because he did not want to call the jury's attention to it. Trial counsel's strategic decision was not patently unreasonable, and "we will not use

---

[3] The prosecutor's closing argument was proper to explain that the 15-year-old victim could not give valid consent to the sex acts since "[t]he age of consent in Georgia is 16 . . . [and] it is a crime to have physical sexual contact with a person 15 years of age or younger." (Footnote omitted.) *Chase v. State,* 285 Ga. 693, 696 (2) (681 SE2d 116) (2009).

hindsight to second-guess that decision on appeal." *Braithwaite*, 275 Ga. at 886 (2) (b). See also *Kania*, 280 Ga. App. at 362 (5) (c); *Mency v. State*, 228 Ga. App. 640, 648 (2) (i) (492 SE2d 692) (1997).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 16, 2009.

*H. Maddox Kilgore*, for appellant.

*Patrick H. Head, District Attorney, Maurice Brown, Amelia G. Pray, Assistant District Attorneys*, for appellee.