**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 5, 2013**

# In the Court of Appeals of Georgia

A12A2275. RHODES v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Earnest Rhodes was convicted of child molestation (OCGA § 16-6-4 (a)) and incest (OCGA § 16-6-22). Rhodes appeals from the denial of his motion for new trial, contending that (1) the trial court erred in failing to suppress the DNA evidence; (2) the trial court erred in charging the jury on similar transaction evidence; and (3) he received ineffective assistance of counsel. For the reasons that follow, we affirm.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict." (Footnote omitted.) *Goss v. State*, 305 Ga. App. 497 (699 SE2d 819) (2010).

So viewed, the evidence shows that the victim was born in 1985. Rhodes married the victim's mother in 1991. When the victim was approximately eight years old, Rhodes made her come into her mother's room and watch pornography while he sat there, played with his penis and ejaculated. When the victim was approximately 10 years old, Rhodes started penetrating her vagina with his fingers and penis. After the first time, Rhodes forced the victim to perform oral sex and had sexual intercourse with her several times per week. Rhodes threatened to punish the victim if she refused to do what he wanted or reported him to anyone. Rhodes also told the victim that he would say she was a bad child, was out of control and was lying if she told anyone about the sexual abuse.

In 1998, when she was 13 years old, the victim gave birth to a full term baby. The victim subsequently reported that Rhodes had been molesting her and that he was the father of her child. Several years later, a Richmond County Crime Scene Unit investigator obtained a search warrant for DNA buccal swabs from Rhodes for the purposes of DNA comparison and paternity testing. Subsequent DNA testing confirmed that there was a 99.99 percent probability that Rhodes fathered the victim's child. Rhodes was subsequently arrested and indicted for child molestation (OCGA § 16-6-4 (a)) and incest (OCGA § 16-6-22).

At trial, the state presented similar transaction evidence[1] showing that Rhodes watched pornographic movies with the victim's sister, and had sexual intercourse with her several times a month beginning when she was 12 years old, and continuing until she was 18 years old. Following the presentation of evidence, the jury found Rhodes guilty of child molestation and incest.

1. Rhodes contends that the trial court erred in denying his motion to suppress the DNA evidence since there was insufficient probable cause to support the warrant to extract buccal swabs from his person for the DNA testing. We disagree.

> "In reviewing the trial court's grant or denial of a motion to suppress, we apply the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review, keeping in mind that a magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court."

(Citations and punctuation omitted.) *State v. Palmer*, 285 Ga. 75, 78 (673 SE2d 237) (2009).

---

[1] The trial court held a hearing pursuant to USCR 31.3 (B), found that the State met its burden of proof pursuant to *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), and granted the State's request to present the similar transaction evidence for the appropriate purpose of showing Rhodes's course of conduct and bent of mind.

"In determining whether probable cause exists for issuance of a search warrant, the magistrate's task is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."

(Citation and punctuation omitted.) *Flewelling v. State*, 300 Ga. App. 505, 509 (2) (685 SE2d 758) (2009).

Rhodes argues that the search warrant affidavit was insufficient because it omitted the fact that the victim had previously made inconsistent and contradictory claims regarding who fathered her child, the omitted information was material, and omission of this information was deliberately misleading.

[I]f a court determines that an affidavit submitted contains material misrepresentations or omissions, the false statements must be deleted, the omitted truthful material must be included, and the affidavit must be reexamined to determine whether probable cause exists to issue a warrant. Even doubtful cases should be resolved in favor of upholding a magistrate's determination that a warrant is proper.

(Citations and punctuation omitted.) *Flewelling*, supra, 300 Ga. App. at 512 (2) (b).

Assuming that the omitted information was material, and considering the affidavit as if the information had been included, the magistrate nevertheless had

4

probable cause for issuing the search warrant. The affidavit in support of the search warrant stated that Rhodes had possibly fathered the victim's child, Rhodes began a sexual relationship with the victim when she was 10 years old, the sexual relationship continued until the victim was 15 years old, the victim's son was conceived during that time period, and the son's father had not been scientifically identified. The information contained in the affidavit clearly implied the possibility that Rhodes was not the father of the victim's child. "Therefore, the affidavit showed a substantial basis for the magistrate to conclude that a crime had been committed and that evidence of that crime would be found in [Rhodes'] blood[,]. . .[and] the information that [Rhodes] claims was improperly omitted [did] not alter the basis for the issuance of the search warrant." (Citations and punctuation omitted.) *Farris v. State*, 293 Ga. App. 674, 676 (1) (667 SE2d 676) (2008).

2. Rhodes contends that the trial court erred in charging the jury on similar transaction evidence. We find no error.

During the sister's testimony regarding similar transactions, the trial court charged the jury that they could consider evidence of Rhodes's similar transactions for the limited purpose of showing his state of mind, knowledge or intent in the charged crimes. The trial court gave a nearly identical instruction in its final jury

charge, except that the trial court stated that the jury could consider the similar transaction evidence for the limited purpose of showing Rhodes's bent of mind or course of conduct in the charged crimes. The trial court's initial and final similar transaction charges were taken nearly verbatim from the pattern charge on similar transaction which both the State and Rhodes submitted at the beginning of trial.[2] V1, R51, R63-64, R84, R97-98

Rhodes did not object to the trial court's similar transaction charges, however, he belatedly attempted to reserve objections on the record after the trial court sent the jury out for deliberations. "When a party fails to object to a jury charge or the omission of a charge during trial but raises the issue on appeal, this Court reviews the charge for plain error. The proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceeding." (Citations and punctuation omitted.) *Simmons v. State*, 291 Ga. 705, 712 (9) (b) (733 SE2d 280) (2012).

---

[2] The State's request to charge stated that the jury could consider the evidence for the limited purposes of showing the defendant's *bent of mind, and course of conduct* in the charged crimes. Rhodes's request to charge stated that the jury could consider the evidence for the limited purpose of showing the defendant's *state of mind, e.g., knowledge or intent* in the charged crimes.

6

Rhodes failed to show plain error. Contrary to Rhodes' argument, the charge in this case in not virtually identical to the charge in *Rivers v. State*, 236 Ga. App. 709 (513 SE2d 263) (1999). The similar transaction charge in *Rivers* impermissibly expanded the limited purposes for which similar transaction evidence can be used by informing the jury that it could consider the similar transaction evidence for the "purpose of showing the crimes charged in the case, and in considering an element of the offense charged in the indictment." Id. at 712 (1) (b). The charge in this case properly instructed the jury that similar transaction evidence may be considered for the limited purpose of showing the defendant's bent of mind or course of conduct in the charged crimes. See *Jordan v. State*, 230 Ga. App. 560, 561-562 (497 SE2d 48) (1998) (holding that trial court properly charged jury that it could consider similar transaction for limited purpose of showing defendant's state of mind, lustful disposition or course of conduct.)

3. Rhodes contends that his trial counsel was constitutionally deficient.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [See] *Strickland v. Washington*, 466 U. S. 668, 687 [104 SC 2052, 80 LE2d 674] (1984). If an appellant fails to

7

meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citations and punctuation omitted.) *Davenport v. State*, 316 Ga. App. 234, 239 (3) (729 SE2d 442) (2012).

(a) Rhodes contends that his trial counsel was ineffective for failing to properly object to the admissibility of the DNA evidence. We discern no error.

Rhodes argues that trial counsel's objection to the DNA results and conclusions, based on a gap in the chain of custody of the evidence, was incomplete because the buccal swabs were not handled in a routine manner. However, he does not point to any evidence supporting his claim.

"The chain of custody rule concerns itself with fungible evidence. To show a chain of custody adequate to preserve the identity of fungible evidence, the State must prove with reasonable certainty that the evidence is the same as that seized and that

8

there has been no tampering or substitution." (Citations and punctuation omitted.) *Hines v. State*, 307 Ga. App. 807, 809 (2) (706 SE2d 156) (2011). Here, the State established the chain of custody of the DNA evidence. The investigator who collected and sealed the buccal swabs ("samples") from the victim, the victim's son and Rhodes, testified that he took the sealed DNA samples to the State crime lab. The investigator identified the samples at trial, and the State admitted the samples into evidence without objection. A forensic biologist from the State crime lab stated that he received the sealed samples. The samples for each individual were submitted in separate envelopes sealed with tamper-proof tape. The envelopes were marked by the agency that collected them, and each envelope received a unique bar code and case number upon arrival at the crime lab. The forensic biologist identified the samples at trial as the sealed samples he received, opened and tested, and he stated that there was no evidence of tampering with the samples. Consequently, there is no evidence to support Rhodes's claim that the DNA evidence was handled in an irregular manner.

Moreover, trial counsel did not testify at the hearing on Rhodes's motion for a new trial. Where trial counsel does not testify at the motion for a new trial hearing, it is extremely difficult to overcome the presumption that his performance was reasonable. See *Fields v. State*, 311 Ga. App. 528, 530 (1) (716 SE2d 587) (2011).

9

Because counsel did not testify at the new trial hearing, Rhodes has not over come the presumption that trial counsel's failure to interpose a more complete objection or further objections to the chain of custody of the DNA evidence fell outside the wide range of reasonable professional conduct. See *Fields*, supra, 311 Ga. App. at 531 (1).

(b) Rhodes also contends that trial counsel was deficient for failing to request and receive expert assistance with the State's DNA evidence, and for failing to move for independent testing of the DNA evidence. Again we discern no error.

Notwithstanding Rhodes's argument that he would have been acquitted if trial counsel had requested independent testing of the DNA evidence, he presented no evidence showing that the State's DNA evidence was defective. See *Lanier v. State*, 288 Ga. 109, 111 (3) (a) (702 SE2d 141) (2010). Furthermore, the DNA evidence in this case was not the sole link between Rhodes and the crimes at issue. See *Williams v. State*, 284 Ga. 849, 852 (3) (672 SE2d 619) (2009). Notably, the victim testified that Rhodes forced her to perform oral sex and had sexual intercourse with her several times per week, and the victim reported that Rhodes had been molesting her and that he was the father of her child. Rhodes's baseless speculation regarding the potential for a different DNA test result than the one which the State introduced at trial did not

constitute a showing of professionally deficient performance by trial counsel. For these reasons, the judgment is affirmed.

*Judgment affirmed. Ray and Branch, JJ., concur.*