**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, P. J., and BROWN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**December 4, 2020**

# In the Court of Appeals of Georgia

A20A1837. BECTON v. THE STATE.

BROWN, Judge.

A jury found Raymont Becton guilty of eight counts of child molestation, four counts of aggravated child molestation, two counts of aggravated sexual battery, and one count each of cruelty to children in the first degree, aggravated sodomy, and statutory rape for acts involving his girlfriend's two daughters and two other victims.[1] Becton appeals from his convictions and the denial of his amended motion for new trial, contending that the trial court erred in denying his motion for a mistrial after the State introduced improper character evidence, and that the evidence was insufficient to support three of the convictions. For the reasons that follow, we affirm.

---

[1] The trial court directed a verdict on one count of rape and one count of terroristic threats.

"On appeal from his criminal conviction, [Becton] is no longer presumed innocent and all of the evidence is viewed in the light most favorable to the jury's verdict." *Meddings v. State*, 346 Ga. App. 294 (816 SE2d 140) (2018). So viewed, the evidence shows that Becton lived with his girlfriend, and the girlfriend's two daughters, T. R. and M. J., who were respectively 11 and 16 years old at the time of trial. T. R. explained at trial that it was "very uncomfortable, and . . . dangerous" living with Becton because he would get her out of her bed every night, carry her into the living room, put her on the couch, and touch and rub her "private part" and her "tiddies." T. R. testified that Becton put his fingers inside her private parts and that it hurt and made her want to cry. He also put his penis in her panties and "it really hurt[ ]," and white stuff came out. Another time, Becton took T. R. out of bed, put her on the couch, unzipped his zipper, took his penis out, and "started to wiggle [it] around" in her private part. T. R. explained that during this incident Becton's penis did not go "in between [her] flaps"; rather, the top of his penis touched the top of her vagina. T. R. testified that one time, Becton called her into a room to rub his back and he had his penis out. T. R. grabbed a broom, hit Becton with it, and ran out of the room. Besides the sexual acts, T. R. described that Becton punished her by hitting her with a wooden paddle and a belt and locking her in her room. One time, Becton hit

2

T. R. in the eye with a metal belt buckle. According to T. R., Becton forced her sister, M. J., to "suck [Becton's] penis" while their mother was out. T. R. also testified that Becton would choke her mother, hold her down on the couch, and hit her with a lamp. Becton told T. R. that if she ever told anyone about what he did, he would hurt her and "put a knife over [her] mom's neck."

T. R.'s sister, M. J., testified at trial that Becton pulled out his penis and forced her to suck it; that he touched her chest; and that he put his hands in her pants and stuck his finger inside her private parts. M. J. also testified that Becton "beat [her]," "whooped" her sister with a belt, and slapped her mother.

The sisters reported the abuse to their cousin, aunt, and great-grandmother at a Super Bowl party. T. R. told her aunt that she and M. J. did not disclose the molestation because Becton had threatened to hurt their mother. The great-grandmother reported the abuse to DFACS. Both girls were interviewed separately by a forensic interviewer at the Coastal Children's Advocacy Center, and their interviews were played for the jury.

The sisters' cousin, T. J., who was 18 years old at the time of trial, testified that when she was 15 years old, she was living with T. R. and T. R.'s mother when Becton

brushed up from behind her and intentionally touched her bottom and chest. She told him to stop and reported the incident to her father, her sister, and T. R.'s mother.

The fourth victim, K. C., testified that she met Becton in 2015 when she was 13 years old, that she began working for his construction business, and that she told him she was 17 or 18 years old. A short time later, the relationship became sexual, and K. C. performed oral sex on Becton twice and also had vaginal sex with him twice. At the time K. C. performed oral sex on Becton, he knew that she was 13 years old. K. C. also testified that she and Becton exchanged messages and had video chats through Facebook. According to K. C., she and Becton did not "chat about anything . . . of a sexual nature" over Facebook because Becton felt as though people were listening or watching; in one message, Becton writes that he does not want to get too explicit over messages because someone might be reading/watching. But, the messages — which were admitted at trial — show that K. C. sent Becton a picture of her naked breasts, and Becton sent K. C. a picture of his penis, to which K. C. responded, "u not on hard lol" and Becton replied, "No [. . . ] Not yet lol." In another exchange, K. C. asked Becton "what you want me to give you . . . tell me daddy," and Becton replies "Really" with a surprised emoji and then responded, "You can't make it happen now." Another time, Becton asked, "Tell me what you want me to do?" and

K. C. responded, "whatever you want to do in your con[t]rol." There are references to "tam[ing] a beast," and Becton stated that he's "gonna tame [K. C.]" In another message, K. C. asked, "but how long we gone go on with our secret."

1. Becton contends that the trial court erred in failing to grant a mistrial after the State, in violation of OCGA §§ 24-4-404 (b), 24-4-413, and 24-4-414, introduced improper character evidence during the video replay of T. R.'s forensic interview. We disagree.

Prior to trial, Becton moved in limine to exclude any statements made by T. R. during her forensic interview that she had seen paperwork indicating that Becton had molested his daughters in Atlanta, arguing that he had not received "any prior notice or anything that's required." The State confirmed that it had redacted from the video "all of that," and the trial court advised the State to be sure that "it doesn't get in." At trial, the State played a three-hour videotape which included two forensic interviews of T. R. and one forensic interview of M. J. During T. R.'s first interview, she told the forensic interviewer that Becton twice tried to make her kiss him on the lips, and that she asked him "why do you do this, what does it get you?" T. R. then recounted to the interviewer that she asked Becton, "[d]o you do this to your daughters," and Becton responded, "[h]ow do you know about that?" The forensic interviewer then stated,

5

"and you asked about his daughters and he didn't know how you knew about his daughters." Several minutes after these statements were played for the jury, Becton moved for a mistrial. The trial court denied the motion, but gave the following curative instruction: "I'm instructing you to disregard the response of [T. R.] that was made during the video as to what occurred after the kissing. You are to disregard her response in that regard entirely." The trial court then confirmed that the jurors would disregard T. R.'s statement by eliciting from them a collective "Yes, sir." Thereafter, Becton renewed his motion for a mistrial, which the trial court denied.

> As a general rule, a trial court's denial of a motion for mistrial based on the improper admission of bad character evidence is reviewed for abuse of discretion by examining factors and circumstances, including the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety.

(Citation and punctuation omitted.) *Womac v. State*, 302 Ga. 681, 683 (2) (808 SE2d 709) (2017). See also *Earwood v. State*, 350 Ga. App. 26, 31 (1) (827 SE2d 719) (2019) (decision to deny a mistrial is within the discretion of the trial court, and will not be disturbed on appeal unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial). "We also consider additional facts like whether the reference to the improper character evidence is isolated and brief,

6

whether the jury's exposure was repeated or extensive, and whether the introduction of the objectionable evidence was inadvertent or whether it was deliberately elicited by the State." (Citation and punctuation omitted.) *Smallwood v. State*, 334 Ga. App. 224, 225-226 (1) (779 SE2d 1) (2015). Moreover, "a trial court generally has the discretion to decide whether a mistrial is the only corrective measure to take or whether proper instructions withdrawing the testimony from the jury's consideration can correct the prejudicial effect." (Citation and punctuation omitted.) *Torres v. State*, 353 Ga. App. 470, 484 (5) (838 SE2d 137) (2020).

Taking into consideration the above factors, the trial court did not abuse its discretion in denying Becton's motion for mistrial. T. R.'s description to the interviewer of her conversation with Becton and the interviewer's response were brief and occurred in the midst of a three-hour-long videotape. See *Jackson v. State*, 321 Ga. App. 607, 612 (1) (739 SE2d 86) (2013) (no reasonable probability that statement in videotape played for jury, referencing defendant's criminal history, contributed to the guilty verdict as the statement was "likely heard by the jury only once" and "was a brief, single comment made toward the end of an approximately 30 minute recording"). Moreover, the exchange was not repeated, and the State's failure to redact it was inadvertent. Additionally, the trial court gave the jury a thorough

curative instruction to disregard the statement. "We ordinarily presume that a jury follows such instructions." *Coleman v. State*, 301 Ga. 720, 722 (3) (804 SE2d 24) (2017). And, as we concluded in *Earwood*, we need not rely on that presumption where, as here, the trial court confirmed the jurors' compliance by obtaining verbal verification. *Earwood*, 350 Ga. App. at 32 (1) (confirming by show of hands that jurors followed trial court's curative instruction to disregard investigator's statement that defendant had other sexual relations within his police vehicle besides those involving the victims). Finally, in light of the overwhelming evidence in this case, "we cannot say that [the] statement is so highly prejudicial as to be incurable by the trial court's admonition." *Womac*, 302 Ga. at 683-684 (2). Consequently, Becton has failed to show that a mistrial was essential to preserve his right to a fair trial, and the trial court did not abuse its discretion in denying his motion.

2. Becton contends there was insufficient evidence to support his conviction on the child molestation charge as alleged in Count 17 of the indictment. Count 17 alleged that Becton "did commit an immoral and indecent act to [T. J.], a girl under the age of 16 years, with the intent to arouse his sexual desires, by touching her breast and buttocks with his hand[.]"

"A person commits the offense of child molestation when [he] . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1). Becton argues that there was no evidence he touched T. J.'s breast or buttocks with his hand where T. J. testified at trial only that while she "was in the kitchen in the refrigerator doing something[,] [Becton] brushed up against [her] from behind, touching [her] bottom and touching [her] chest." Moreover, while T. J.'s father testified that T. J. told him Becton touched her twice, he did not testify as to where Becton touched her.

"[T]here is no requirement that the State present testimony that precisely tracks the language found in the indictment." (Citation and punctuation omitted.) *Dew v. State*, 292 Ga. App. 631, 632-633 (1) (a) (665 SE2d 715) (2008).

> The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense. Our courts do not employ an overly technical application of the fatal variance rule, focusing instead on materiality.

9

(Citation and punctuation omitted.) *Kay v. State*, 306 Ga. App. 666, 669 (3) (703 SE2d 108) (2010). The discrepancy in the evidence in this case does not constitute a fatal variance. The evidence showed that Becton intentionally touched T. J. on her breast and bottom, and her failure to specify that Becton used his hand was not so material as to be fatal or to mandate a conclusion that the evidence was insufficient to support his conviction on this charge. See, e.g., *Buice v. State*, 239 Ga. App. 52, 58-59 (4) (520 SE2d 258) (1999) (evidence sufficient to support conviction for child molestation even though indictment charged defendant with putting his finger in victim's vagina, but victim testified at trial that defendant rubbed his hand on her vagina). Indeed, the jury was authorized to infer that Becton used his hand to touch T. J. given that he brushed up *behind* her at the same time he touched her chest. Cf. *Latta v. State*, 341 Ga. App. 696, 699 (1) (802 SE2d 264) (2017) (jury authorized to infer from testimony that defendant touched victim's vagina deliberately rather than accidentally). "Moreover, the issue of whether the touching was sexual in nature is for the jury to decide." *Kay*, 306 Ga. App. at 669 (3).

Becton relies on *Butler v. State*, 352 Ga. App. 579 (835 SE2d 389) (2019), for the proposition that "averments in an indictment as to the specific manner in which a crime was committed are not mere surplusage, and such averments must be proved

10

as laid, or the failure to prove the same will amount to a fatal variance and a violation of the defendant's right to due process of law." Id. at 583. But *Butler* is inapposite. In that case, we found the evidence insufficient to support the defendant's conviction for child molestation for using his hands to grab the victim's buttocks and to rub the victim's vagina and buttocks, where the victim specifically indicated that her encounter with the defendant which formed the basis of the challenged conviction involved the defendant inserting his penis into her vagina, and in no way involved the defendant's use of his hands. Id. at 580-583. In this case, there was no fatal variance in Count 17 of the indictment, and the totality of the evidence presented was sufficient for a jury to find Becton guilty beyond a reasonable doubt of molesting T. J. when he touched her breast and buttocks. Cf. *Espinosa v. State*, 352 Ga. App. 698, 699-701 (1) (834 SE2d 558) (2019) (reversing child molestation count that alleged that the defendant touched vaginal area of the victim with his hand, where the victim testified that the defendant never actually did so, and where the transcript did not otherwise show that the defendant touched the child's vaginal area); *Woods v. State*, 244 Ga. App. 359, 360-361 (2) (535 SE2d 524) (2000) (evidence insufficient to support conviction for child molestation where victim never testified that defendant fondled or even touched her genitalia).

11

3. In his final enumeration of error, Becton contends there was insufficient evidence to support his convictions for aggravated child molestation and statutory rape of K. C. We disagree.

"A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy." OCGA § 16-6-4 (c). "A person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse, provided that no conviction shall be had for this offense on the unsupported testimony of the victim." OCGA § 16-6-3 (a). Here, Count 18 of the indictment charged Becton with aggravated child molestation for "commit[ing] an immoral and indecent act to [K. C.], a girl under the age of 16 years, involving her mouth and his sexual organs, to wit: oral sex, with the intent to arouse and satisfy his sexual desires, said act involving an act of sodomy[.]" Count 19 charged Becton with statutory rape for "engag[ing] in sexual intercourse with [K. C.], a person under the age of 16 years of age and not the spouse of the accused[.]" With regard to the statutory rape conviction, Becton argues that K. C.'s testimony that she had "vaginal sex" with Becton, without any further description, is insufficient to prove penetration of K. C.'s vagina by Becton's sex organ. In this same vein, he

12

contends that K. C.'s testimony that she performed "oral sex" on Becton, without any further description of a "specific sexual act," is insufficient to prove that he committed aggravated child molestation.

(a) As to the conviction of aggravated child molestation, we find no merit to Becton's argument.

> Witnesses are not required to describe the acts constituting the commission of crimes in statutory or technical language in order to prove the commission of such acts. Rather, the terms used by witnesses to describe criminal acts may be considered in context to provide meaning, and jurors can be presumed to have some knowledge of slang expressions in common parlance in the vernacular.

(Citations and punctuation omitted.) *Flewelling v. State*, 300 Ga. App. 505, 508 (1) (685 SE2d 758) (2009) ("'oral sex'" is defined as "'oral stimulation of the genitals'" and victim's testimony using the term authorized the jury to infer contact between mouth and genitals sufficient to sustain conviction for aggravated child molestation). K. C.'s testimony that she had "oral sex" with Becton and her clarification that she performed "oral sex" on him authorized the jury to infer that "*some* degree of contact occurred between [K. C.'s] mouth and [Becton's] penis." (Emphasis in original.) *Miranda v. State*, 354 Ga. App. 777, 781 (1) (841 SE2d 440) (2020) (jurors are

13

presumed to have some knowledge of colloquial expressions such that defendant's admission to having the victim "'go down on' [him] is generally understood to mean the stimulation of one's genitals by the mouth of another, and our decisions have afforded the jury some latitude in determining what the words of the specific solicitation mean") (punctuation omitted). The evidence here was sufficient to sustain Becton's conviction of aggravated child molestation of K. C.

(b) We also find sufficient evidence to sustain Becton's conviction of statutory rape of K. C. Becton contends that the evidence was insufficient to sustain his conviction because "[t]here was no medical or scientific evidence presented which would demonstrate, by direct or circumstantial evidence, the penetration of [K. C.], as defined by carnal knowledge." We find no merit to this claim.

In this case, evidence that K. C. told an investigator during an interview that Becton had sex with her, and her testimony at trial that Becton had vaginal sex with her was sufficient to sustain Becton's conviction for statutory rape. Specifically, the jury was authorized to infer penetration of the female sex organ by the male sex organ from K. C.'s use of the term "vaginal sex." See *Flewelling*, 300 Ga. App. at 508 (1). See also *Drinkard v. Walker*, 281 Ga. 211, 213, 216-217 (636 SE2d 530) (2006) (crimes of rape, statutory rape, and incest share the element of sexual intercourse). Cf.

*Maher v. State*, 216 Ga. App. 666 (2) (455 SE2d 377) (1995) (evidence that defendant had "sexual intercourse" with 11-year-old victim sufficient to sustain conviction for statutory rape). Moreover, the evidence presented at trial was sufficient to establish penetration of the female sex organ by the male sex organ even without scientific or medical evidence of penetration. See *Burnett v. State*, 236 Ga. 597, 598 (1) (225 SE2d 28) (1976) ("it is not necessary that expert medical testimony be introduced to corroborate the actual consummation of the rape"). See also *Newton v. State*, 296 Ga. App. 332, 336 (1) (b) (674 SE2d 379) (2009) (for rape conviction, scientific corroboration not necessary to support victim's testimony); *Wells v. State*, 208 Ga. App. 298, 298-299 (1), 301 (2) (b) (430 SE2d 611) (1993) (victim's testimony that defendant engaged in an act of "intercourse" without her consent and against her will sufficient to sustain rape conviction even without corroborating medical evidence); *Phillips v. State*, 172 Ga. App. 864, 865 (1) (324 SE2d 807) (1984) (physical precedent only) (although rape victim's medical exam provided no clear corroboration, victim's testimony that her stepfather pulled down her underwear, forced her to the floor, held her down, and got on top of her and "'started moving up and down,'" was sufficient to sustain conviction).

*Judgment affirmed. Dillard, P. J., and Rickman, P. J., concur.*